HOBRECHT et al. v. SAN ANTONIO & A. P. RY. CO.

(Court of Civil Appeals of Texas. San Antonio. Nov. 15, 1911. Rehearing Denied Dec. 20, 1911.)

1. NEW TRIAL (§ 44*)—MISCONDUCT OF JURY.

Where, in an action for the death of a person struck by a train at night, the uncontradicted evidence showed that the rails were dry, and experts testified that the train could have been readily stopped within much less than 100 feet, the statement of a juror during the deliberation of the case that he had been a railroad fireman, and knew that rails were wet at night, and that the engineer could not have stopped the train any sooner than he did, was improper, and, where the statement affected the verdict not only of the juror, but of other jurors, the refusal to grant a new trial was an abuse of discretion.

[Ed. Note.—For other cases, see New Trial, Cent. Dig. §§ 80–85; Dec. Dig. § 44.*]

2. APPEAL AND ERROR (§ 977*)—RULINGS ON APPLICATION FOR NEW TRIAL—REVIEW—ABUSE OF DISCRETION.

The trial court has discretion in granting or refusing a new trial, and, unless the discretion has been abused, the court on appeal will not disturb its ruling.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3860–3865; Dec. Dig. § 977.*]

Appeal from District Court, Bexar County; Arthur W. Seeligson, Judge.

Action by Amanda Hobrecht and others against the San Antonio & Aransas Pass Railway Company. From a judgment for defendant, plaintiffs appeal. Reversed and remanded.

T. M. West and John Sehorn, for appellants. Frank H. Wash and Houston, Boyle, Storey & Davis, for appellee.

FLY, J. Appellants, the widow and children of Alvin Hobrecht, sued appellee to recover damages for the death of the husband and father, and a trial by jury resulted in a verdict and judgment in favor of appellee.

[1] The only assignment of error presented in the brief is: "The court erred in overruling plaintiffs' motion for a new trial based on the misconduct of C. B. Parchman, one of the jurors trying this case, as fully set forth in plaintiffs' bill of exception No. 1." The bill of exception contains a full statement of all the evidence heard on the trial of the issue.

On the night of October 18, 1908, Alvin Hobrecht was run over by a train belonging to appellee at or near a public crossing in the town of Elmendorf, Bexar county, Tex., and was killed. The court submitted the cause to the jury on three phases of negligence: First, as to the condition of the track being such as to cause Hobrecht to stumble and fall and bring about his death; second, as to the negligence of the engineer in not using ordinary care in discovering Hobrecht on the track; and, third, as to the negligence of the engineer in not using proper means to prevent the catastrophe after discovering the peril of Hobrecht. Appellants introduced proof tending to show that the engineer saw Hobrecht when he was 100 feet distant, and that, with proper use of the means at hand, he could have stopped the engine in from 10 to 60 feet. The testimony was uncontroverted that the track was dry and the train equipped with air brakes and running at the rate of six or eight miles an hour, the grade being one-half of 1 per cent.; that is, a fall of six inches in every hundred feet. The evidence being as stated, when the jury retired and had consulted, it was found that eight or nine of the jury favored a verdict for appellee, among the number being C. B. Parchman. In the discussion among the jurors, Wellborn, who favored a verdict for appellants, contended that the engineer ought to have stopped the train after seeing Hobrecht, and Parchman then said that he had been a railroad fireman, and had experience and knew that the track was wet at night, and that the engineer could not stop the train any sooner than he did. The statement was made after a ballot had been taken, and stood eight for appellee and four for appellants. Parchman admitted that some of the jurors called his attention to the fact that the testimony showed that the rails were dry, and he told them they could not have been dry at night. Wellborn, the juror to whom Parchman was talking, stated that Parchman said the rails were wet, and further said: "It had considerable influence on me. I held out for the plaintiff in the case, but, after I considered this for some time, I thought probably it might have something to do with it, and, as I thought he was an experienced railroad man, I thought he might be right about it." Willman, another juror, testified that the statement of Parchman that the track was wet caused him to change. He said: "Because the case was tried on a dry rail theory, and this seemed to change the case, seemed to be different evidence in the case, and caused me to consider the case in a different way." Another juror stated that Parchman said he had been a fireman; that he knew by experience that it was impossible to stop a train on a downgrade on a wet rail. Barnes, a juror who favored the appellants, said he came right over when he was told Parchman was an experienced railroad man and heard his statement about the track being wet. Parchman was told by jurors that the testimony was that the rails were dry, and he made his statement to convince them that the rails were wet. Ten of the jurors besides Parchman practically agreed that he asserted, in the face of testimony to the contrary, that the rails were wet, and three or more of the jury were influenced to such an extent by his assertions that they changed their minds and decided in favor of appellee.

It is apparent from the statements made by the jurors that new testimony was received in the jury room from a juror who was a partisan of such a type that, in the face of the charge of the court on the subject of discovered peril, he stated "the railroad company isn't liable at all for a man getting drunk and laying down on the railroad track at night and letting a man run over him;" and, further, "I believe the testimony was the rails were dry, but I know the rails would get wet at night." It was uncontradicted that his statements affected the verdict of several jurymen. Jurors are sworn to try a cause according to the law and evidence, and they have no more right to hear and act upon the testimony, heard for the first time in the jury room from one of their number than they would have to accept the law from one of their number. The oath obviously forbids that any private information should be given for the first time in the jury room, after the case has been closed, and no opportunity afforded the party to whom the evidence is antagonistic to meet it. In the early Texas Case of Green v. Hill, 4 Tex. 465, the Supreme Court held: "The oath of a juror will not permit him to find a verdict on what he may think he knows of himself, because then he would be passing on evidence known to himself, and not to his fellow jurors. If a juror believes himself in possession of a knowledge of facts calculated to influence his verdict, he should make it known to the court; and, if sworn to give his evidence, his fellow jurors will then have it before them, not as what the juror would tell them in the jury room, but what he had sworn to on the witness stand. This way of allowing jurors to rely on their own supposed knowledge of facts or the knowledge of any number of them without being given in evidence is believed more frequently to occur than it ought. There is danger of its growing into precedent. It is especially wrong in principle, and exceedingly pernicious in its

tendency, as affording a pretense for disregarding the evidence and relying on their own supposed personal knowledge of the fact, discolored by passion and prejudice, and warped by every variety of personal feeling." That language applies with pertinency and force to the case now under consideration when a zealous juror makes an expert witness of himself in the privacy of the jury room, after all the public evidence has been heard and the law of the case given by the court, and flatly contradicts the evidence of witnesses who testified, and by his claim of knowledge and experience superior to that of the witnesses influenced the verdict of two or more jurors, and gained a verdict for the defense. Cases between litigants must be tried in the courtroom, and all the facts must be heard there, and the hearing of evidence from a juror after he enters the jury room to consider his verdict would be a dangerous practice, which would place a litigant at the mercy of an unscrupulous, prejudiced, or overzealous juror. As conservatively said by the Chief Justice of this court in the case of Yanez v. Traction Co., 126 S. W. 1176: "It would seem to be improper for a juror to communicate anything to his fellow jurors in the nature of testimony concerning an issue of fact or the credibility of witnesses."

But it is argued by appellee that if the juror Parchman merely expressed his belief and convictions concerning the case, based on his experience in life, that was entirely proper. Let that be admitted, and still the statements of the witness are without the pale of the proposition, for he not only stated his convictions that the train could not be stopped within 100 feet, when a number of experts had testified that it could have been readily stopped in a much less distance, but testified that rails are always wet at night, in the face of all the testimony to the effect that on the night of the accident the rails were dry. The witnesses, employés of appellee, swore that the rails were dry. The juror testified in the jury room, "I know they were wet." He could with as much propriety have stated that he knew that the headlight on the engine was not burning, although the witnesses had sworn that it was, and given his experience as a reason for his statement. It may be true that rails always get wet at night regardless of the state of the weather, but, if so, that knowledge should have been disclosed in the courtroom, so that appellants could have an opportunity to meet that line of defense. As it was, dampness of the rails was not sprung as a defense until the jury were considering their verdict. One juror also stated that Parchman not only made a statement as to the rails being wet, but also said "that he had been a locomotive fireman for a number of years, and was familiar with running and operating locomotives, and had experience in handling them, and knew the distance in which it could be stopped, and mentioned about a wet rail." It may be that jurors should be permitted to argue their convictions based on experience, but it is a dangerous practice when a juror puts aside the testimony in the case and sets up his private opinions in opposition to it, and one that may result in traps being sprung upon litigants when they have no opportunity for escape. The juror might, with as much propriety, have concluded and stated from his experience that the rails of railroads are oiled or soaped every night, as that they become wet every night from dew or other causes.

[2] It is argued that although the misconduct was material—that is, may have affected the verdict—the statute lodges in the trial judge the discretion of granting or refusing a new trial and that this court can only review a decision under such circumstances, when it is satisfied from the evidence that the district court abused its discretion. That is the rule enunciated by this court. Foley v. Northrup, 47 Tex. Civ. App. 277, 105 S. W. 229. But the converse is true, and, when this court becomes convinced that the evidence shows that a sound and fair discretion has not been exercised, it has power to reverse the decision of the trial judge, and will not hesitate to exercise such power. The evidence is convincing to this court that Parchman based his verdict, not on the testimony of the witnesses, but on knowledge that he claimed to have, which was absolutely contradictory of the testimony heard in open court, and which testimony he persuasively impressed upon the minds of other jurors to such an extent as to cause them to change their minds. All of the testimony sustains these conclusions.

The judgment will be reversed, and the cause remanded.