## SAN ANTONIO TRACTION CO. v. CASSANOVA.

(Court of Civil Appeals of Texas. San Antonio. Jan. 29, 1913. Rehearing Denied March 19, 1913.)

1. STREET RAILROADS (§ 102*)—PERSONAL INJURIES—PROJECTION OF TRACK—PROXIMATE CAUSE.

Where it is shown that car tracks project too far above the street, and that the occupants of a vehicle, in attempting to get off the track on seeing an approaching car, were prevented by the projection, causing the wheels to skid and the car ran into them, the projecting track was the proximate cause of the injury.

[Ed. Note.—For other cases, see Street Railroads, Cent. Dig. §§ 186, 194, 200, 203; Dec. Dig. § 102.*]

2. STREET RAILROADS (§ 110*)—COLLISION WITH VEHICLE—PROJECTION OF TRACK—PLEADING AND PROOF.

In an action for injuries to an occupant of a vehicle, caused by the projecting tracks of a street railroad, which prevented the vehicle from getting off the track in time to avoid an oncoming car, it was not necessary to plead or prove that it was the duty of defendant to keep its tracks in such condition as not to interfere with free and unimpeded travel.

[Ed. Note.—For other cases, see Street Railroads, Cent. Dig. § 224; Dec. Dig. § 110.*]

3. STREET RAILROADS (§ 86*)—PERSONAL INJURIES—REPAIR OF ROADBED.

It is the duty of a street railroad company to use reasonable care to keep its roadbed in repair so as not to obstruct travel across or along the same, whether such duty is enjoined by legislative act or stipulated in the charter, or in an ordinance, or not, as the duty arises from the use of the street by the railroad.

[Ed. Note.—For other cases, see Street Railroads, Cent. Dig. §§ 150, 173, 183–185, 187; Dec. Dig. § 86.*]

4. STREET RAILROADS (§ 112*)—PERSONAL INJURIES—PROJECTING TRACKS.

In an action for injuries to the occupant of a vehicle, sustained in a collision with a street car, a prima facie case is made when it is shown that the tracks projected above the street so as to cause an obstruction, which resulted in causing the wheels of the vehicle to skid, so that it could not avoid the collision.

[Ed. Note.—For other cases, see Street Railroads, Cent. Dig. §§ 227, 228; Dec. Dig. § 112.*]

5. STREET RAILROADS (§ 118*)—INSTRUCTIONS—PLEADING—DISCOVERED PERIL.

A petition, in an action for injuries sustained in a collision with a street car, alleging that the vehicle containing plaintiff was plainly seen by defendant's servants, or could have been seen by the use of ordinary care, and the car failed to stop, but was negligently driven toward plaintiff, etc., is sufficient to raise the issue of discovered peril so as to authorize an instruction thereon.

[Ed. Note.—For other cases, see Street Railroads, Cent. Dig. §§ 258–269; Dec. Dig. § 118.*]

6. STREET RAILROADS (§ 114*)—INJURY TO DRIVER—DISCOVERED PERIL—EVIDENCE.

On the issue of discovered peril, evidence held sufficient to show that the motorman realized the perilous position of the occupants of the vehicle struck by his car in time to have stopped the car.

[Ed. Note.—For other cases, see Street Railroads, Cent. Dig. §§ 239–250; Dec. Dig. § 114.*]

7. TRIAL (§ 251*)—INSTRUCTIONS—PLEADING.

When the allegations as to injuries showed that the earning capacity of the injured person was necessarily impaired, it is sufficient to justify a submission of the issue, even though it has not been alleged in terms that the earning capacity was impaired.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 587–595; Dec. Dig. § 251.*]

8. NEW TRIAL (§ 140*)—MISCONDUCT OF JURORS—STATUTES—BURDEN OF PROOF.

Under Rev. Civ. St. 1911, art. 2021, providing, on a motion for new trial on the ground of misconduct of jurors, that the jurors may be examined, the burden of proof rests upon the party seeking to impeach the verdict to show the misconduct.

[Ed. Note.—For other cases, see New Trial, Cent. Dig. §§ 284–287, 289, 302, 306; Dec. Dig. § 140.*]

9. APPEAL AND ERROR (§ 1015*)—FINDINGS OF COURT—MOTIONS FOR NEW TRIAL.

Under Rev. Civ. St. 1911, art. 2021, providing that, where the ground of the motion for new trial is misconduct of the jury, the court shall hear evidence and examine the jurors themselves, the judgment of the court on the testimony adduced has the same force and effect as a judgment in any other case on the facts.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3860–3876; Dec. Dig. § 1015.*]

10. APPEAL AND ERROR (§ 978*)—DISCRETION OF COURT—MOTION FOR NEW TRIAL.

The discretion of the trial court, under Rev. Civ. St. 1911, art. 2021, providing that, where the ground of the motion for new trial is the misconduct of the jury, the court shall hear evidence thereof and may examine jurors, will not be interfered with on appeal, when fairly exercised.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3866–3870; Dec. Dig. § 978.*]

11. APPEAL AND ERROR (§ 978*)—DISCRETION OF COURT—MOTION FOR NEW TRIAL—ABUSE OF DISCRETION.

Where, on a motion for new trial for misconduct of jurors, in an action for personal injuries in which the recovery was $10,000, the jurors are examined, as provided by Rev. Civ. St. 1911, art. 2021, and their testimony shows that it was discussed among them the cause of hospital and doctors' bills and the percentage which the lawyers would get, some saying that they would get one-half, etc., and at least two of the jurors admitted that they considered it in their verdict, and two of the jurors were not called, it was an abuse of discretion of the trial court to overrule the motion.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3866–3870; Dec. Dig. § 978.*]

12. DAMAGES (§ 72*)—PERSONAL INJURIES—ATTORNEY'S FEES.

In personal injury actions attorney's fees form no part of the compensation.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 147–151; Dec. Dig. § 72.*]

13. DAMAGES (§ 160*)—MEDICAL EXPENSES—NECESSITY OF PLEADING.

In a personal injury action medical expenses cannot be considered, where not alleged.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 439, 445, 448; Dec. Dig. § 160.*]

14. APPEAL AND ERROR (§ 1070*)—PREJUDICIAL ERROR—AMOUNT RECOVERABLE.

Where the jury considered attorney's fees and medical expenses, not pleaded, in determining the compensation to be paid to the person

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

injured, and the amount so allowed could not be ascertained by the appellate court, the error was prejudicial, since it could not be cured by a remittitur.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4231–4233; Dec. Dig. § 1070.*]

Appeal from District Court, Bexar County; Edward Dwyer, Judge.

Action by J. L. Cassanova, by next friend, against the San Antonio Traction Company. From a judgment for plaintiff for $10,000, defendant appeals. Reversed and remanded.

Templeton, Brooks, Napier & Ogden, of San Antonio, for appellant. C. C. Harris and John Sehorn, both of San Antonio, for appellee.

FLY, C. J. This is a suit instituted by appellee, a minor, through his next friend, to recover damages from appellant, alleged to have been sustained by appellee through the negligence of appellant in striking a vehicle, in which appellee was riding, with one of its cars, whereby he was thrown to the street and seriously and permanently injured. The grounds of negligence alleged consisted in permitting the track to project too far above the surface of the street, and in failing to check or stop the car after the peril of appellee had been discovered. There was a trial by jury, resulting in a verdict and judgment in favor of appellee in the sum of $10,-000.

[1] The first assignment of error assails the first paragraph of the charge of the court, which permitted a recovery, under certain conditions, if the rail of the track projected above the surface of the street so as to cause the cart wheels to "skid" or slide along the rail, and such sliding caused the collision, because the rail was not the proximate cause of the injury, and appellant could not have foreseen that such injury would result from the condition of the track. The evidence clearly indicates that the driver of the cart would have succeeded in his attempt to leave the track, had it not been for the condition of the track; and its projection was therefore a proximate cause of the accident. Appellee swore: "We was in a two-wheeled cart, throwing papers on the street, and we seen the car coming and tried to get out of the way, and the man tried and tried to get the horse out of the street car's way, and the street car track was too high, and the wheel couldn't get out of the track, and the man who was driving guided his horse out of the track, and the wheel slid in the track, and the man who was driving never did stop the car, and he struck the cart."

The authorities presented by appellant fail to sustain its proposition. It is stated by appellant that the Iowa case (De Camp v. Sioux City, 74 Iowa, 392, 37 N. W. 971) has facts "practically identical with those in the case at bar." We think not. In that case a city was sued for permitting street car tracks to become defective, which caused a butcher's wagon to come into collision with his express wagon. It was shown that the collision occurred by reason of the reckless and unlawful driving of the butcher, and not by the negligence of the city. It has no application to the facts of this case. We think the facts in this case show that the injury was the natural and probable consequence of the negligence of appellant in leaving its track in the condition that it was, and it should have foreseen that such an accident might occur. It might as well be argued that if a frog is left unblocked it cannot be foreseen that a man will get his heel fastened in it and be run over by a locomotive. There are numerous cases, however, of that kind, which have been sustained. Railway v. Hughes, 22 Tex. Civ. App. 134, 54 S. W. 264; Railway v. Walker, 70 Tex. 126, 7 S. W. 831, 8 Am. St. Rep. 582. Appellee was using the street as he had the right to do, and it was the duty of appellant to keep its track in such condition that appellee could use it with safety.

[2] Appellee was not required to plead or prove that it was the duty of appellant to keep its track in such condition as not to interfere with free and unimpeded travel thereon. The streets are laid out and built in cities and towns primarily for the use of vehicles and persons, and the use of them by railways of any kind is merely permissive, and to a great extent subservient to the original design. Railroad v. Hewitt, 67 Tex. 473, 3 S. W. 705, 60 Am. St. Rep. 32; Street Railway v. Renken, 15 Tex. Civ. App. 229, 38 S. W. 829; Traction Co. v. Haines, 45 Tex. Civ. App. 289, 100 S. W. 788.

[3, 4] It is the duty of a street railway company to use reasonable care and diligence to keep its roadbed in repair so as not to obstruct travel across or along the same, whether such duty is enjoined by legislative act or stipulated in the charter, or in an ordinance, or not. The duty arises from the use of the street by the railway company. Railway v. Medlenka, 17 Tex. Civ. App. 621, 43 S. W. 1028; Laredo Electric Railway v. Hamilton, 23 Tex. Civ. App. 480, 56 S. W. 988. It was a matter of defense to show that the defect was not known to appellant, if such want of knowledge be a defense, as we do not think it is. A prima facie case was made when it was shown that the obstruction was in the street.

The second assignment of error is disposed of by our disposition of the first assignment. In the case of Street Railway v. Delesdernier, 84 Tex. 82, 19 S. W. 366, a lady was driving across the street railway track, and her buggy struck a rail which projected only one-fourth to three-fourths of an inch above the surface of the street, and she was thrown to the pavement and hurt, and the street railway company was held liable, because the

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

duty rested on it to so construct its track as not to interfere with the free use of the street, and to keep it in that condition.

[5] It was alleged in the petition "that the dangerous position of said vehicle, as above set out, was obvious, plainly seen, and well known to defendant's servants and employés in charge of and operating said approaching car, or by the use of ordinary observation and care the same could have been known to said employés and servants, as aforesaid; but, notwithstanding the dangerous position of said vehicle and its occupants, defendant's servants and employés in charge of and operating said car failed and refused to check or stop said car, and recklessly and negligently drove same rapidly towards Joe Cassanova," etc. The allegation is sufficient to raise the issue of discovered peril, and justified the charge of which complaint is made in the third assignment of error.

[6] The evidence of the motorman showed that he saw the cart and its two occupants for quite a distance before he struck them; that the track was free from anything that obstructed his vision; and it was shown that the car could have been stopped, running at the rate the motorman stated it was, in four or five feet. The motorman stated that prior to the accident no one was driving the horse, but that the lines were tied to the seat. He must have seen the cart and occupants in order to have so testified. He must have seen them, and must have realized their perilous position. Railway v. Renken, herein cited. It was his duty to see them. We therefore overrule the fourth and fifth assignments of error.

[7] It has been held in numerous cases that, when the allegations as to injuries are such as to show that the earning capacity of the injured person was necessarily impaired, it is sufficient to justify a submission of the issue, even though it has not been alleged in terms that the earning capacity was impaired or destroyed. Railway v. Curry, 64 Tex. 85; Railway v. Smith, 28 S. W. 110; Railway v. Johnson, 37 S. W. 771; Railway v. Parish, 93 S. W. 682; Traction Co. v. Probandt, 125 S. W. 931. The charge complained of does not permit a double recovery. Railway v. Lynch, 22 Tex. Civ. App. 336, 55 S. W. 389. The facts alleged and proved, as to the injuries, show that they were of such a nature as to seriously impair the earning capacity of appellee. The sixth and seventh assignments of error will not be sustained.

If there was any testimony tending to show that the horse shied in such a manner as to throw or back the cart against the car, the court did not err in refusing to submit such issue to the jury in the manner requested. The special charge did not contain the law, if there had been evidence to sustain it. Shelton v. Traction Co., 32 Tex. Civ. App. 507, 75 S. W. 338, and authorities therein cited. The motorman swore that the cart backed into the car, which was a remarka-

ble performance in the light of the fact that the car and cart were moving in different directions when the collision occurred. If the testimony was true, the shying of the horse merely concurred with appellant's negligence, and the special charges were properly refused.

[8-11] By the law of 1905 (article 2021, Rev. Stats. 1911) it is provided that, where the ground of the motion for new trial is misconduct of the jury, the court shall hear evidence thereof, and may, in his discretion, grant the motion. Jurors are made competent to testify in regard to the matter; provision being made for their testimony, and that of others, to be in open court. Undoubtedly, under the provisions of the statute, the burden would rest upon the party seeking to impeach or discredit the verdict, and the judgment of the court on the testimony adduced must have the same force and effect as would his judgment in any other case on the facts; that is, if there is evidence to support it, it cannot be disturbed by an appellate court. The law places the discretion, as to sustaining or overruling the motion for a new trial on the grounds specified in the statute, in the trial court; and appellate courts have no authority to disturb the ruling thereon, unless it is apparent that there has been an abuse of such discretion. This construction of the statute was first announced by this court in Foley v. Northrup, 47 Tex. Civ. App. 277, 105 S. W. 229, and it has been followed by other Courts of Civil Appeals and the Supreme Court. Railway v. Blalack, 128 S. W. 706; Railway v. Gray, 137 S. W. 731; s. c. (Sup.) 143 S. W. 606; Railway v. Brown, 140 S. W. 1172. In the Gray Case (Sup.) 143 S. W. 606, the Supreme Court concludes that an appellate court may review the action of a trial judge under the provisions of the statute, but confines such review to cases "wherein it clearly appears that the rights of parties have been disregarded." In that case a juror stated that the plaintiff ought to have $50,000, because the attorneys would take half of it.

In the Blalack Case all of the jurors agreed, as in this case, that the appellant was liable for damages, but differed as to the amount. On the first ballot all but three jurors were for amounts not less than $20,000, the lowest amount being $4,000, and the verdict was for $20,000. Two of the three jurors, in favor of lower sums than the final verdict, agreed to that sum before the misconduct occurred, which is described as follows in the opinion: "After this one of the jurors suggested that the defendant had insurance on the life of Frank Blalack probably to the extent of $5,000, and that defendant had collected it and was using it, and it was also stated by some member that, if they did not find for a considerable amount, Mrs. Blalack would not have anything left after the lawyers were paid—that is, that she would not have much after they were paid—and

that the fact as to what the lawyers were to get was discussed and taken into consideration in reaching the verdict. All the jurors testified that said remarks were made at a time when the jury were not discussing the case, and all further swore that they were not influenced by said remarks in arriving at a verdict, but were governed by the evidence and charge of the court." Chief Justice Rainey held that the court had not abused its discretion in overruling the motion for new trial, and the Supreme Court necessarily approved the decision by refusing a writ of error.

In the case of Railway v. Brown, herein cited, it is stated: "Appellant complains of the refusal to grant it a new trial, because of remarks by jurors, after they had retired to consider of the verdict, that appellee would have to divide his recovery with his attorneys, as the size of the verdict indicates they were influenced thereby. On the hearing of the motion for new trial, most, if not all, of the jurors testified as to the misconduct while deliberating. Several jurors stated that the remark was made several times, when some other juror would say they had nothing to do with that, which would hush it up. Others testified that they did not hear any such discussion, and others that said remarks did not influence their verdict." The appellate court held that the trial court had not abused its discretion in overruling the motion for new trial, based on the misconduct of the jury. The Supreme Court approved the decision.

The testimony in this case tends to show that very improper suggestions and arguments were made by jurors to increase the amount of the verdict, and still worse than that testimony was volunteered and given by jurors in regard to doctor's and hospital bills and attorney's fees in other cases. The foreman, Valentine White, said: "There was a general discussion. Some argued he would get one-third; some said one-half. * * * I don't think any of the jurors said the lawyers would get more than one-half. This discussion was before we arrived at a verdict. It was during the time we were considering what the verdict would be." He further testified: "I didn't hear the particular amount the hospital bill would be discussed among the jurors; just discussed in a general way it would be a great deal. They said the hospital bills would be a great deal; that would have to come out. That general discussion was had at the time the jurors were reaching a verdict. They were discussing it for the purpose of determining what would be a reasonable amount for him to pay. * * * They were arguing it to determine how much the boy would get. I took into consideration what percentage the boy would get out of the amount awarded. It would be what was left after taking out the lawyer's fees and the doctor's and hospital fees." It is true that the juror stated,

on cross-examination, that the discussion did not influence his verdict, yet he reiterated that he took into consideration what had been paid for treatment, and what appellee would have to pay for attorney's fees. He also stated that a case of trephining was told about by one juror, and others said that they knew what persons who had been injured had paid their attorneys, and others spoke about having suits. The juror reiterated that he would have rendered the verdict he did, regardless of the discussion, but closed by saying: "I did consider those facts, though, in arriving at my verdict."

A. H. Fraser, the other juror who testified, stated: "There was a general discussion there, and they claimed the lawyers would get, some said 30, and some said 50, per cent., and the hospital bills would be very large, and consequently the boy would get a small per cent. of what was awarded to him. That was discussed by them before they arrived at the amount of the verdict. They were discussing it at the time they were considering it. They said the boy would get a small portion of the verdict rendered. One of the jurors spoke about having been hurt himself. I don't know his name. He said he had been hurt, had been in plaster of paris, and that he knew what the hospital bills were and the doctor's bills, and he said the time he lost, and such things as that, amounted to a great deal of money. * * * He spoke about lawyer's fees. He said, in his opinion, it would be 50 per cent.; he hadn't had any personal experience. That was a general discussion among the jurors while they were trying to arrive at the amount of the verdict. There was one juror there that said—I don't know whether he said it was his sister or a lady friend of his—but he said that she had a case where she had been hurt, and they had settled with her, and I think (I am not clear on the amount) it was seven or eight thousand dollars, and she got about half of it." The juror stated that he was not influenced by the statements as to doctor's and hospital bills and attorney's fees.

The statements of the two jurors who testified were not contradicted by either of the other jurors. No others, in fact, testified, and in the ex parte affidavits of eight others it was admitted by each of them that something was said about attorney's fees, as well as doctor's and hospital bills. Each of them, however, said the statements were made as opinions, and did not influence either of them. They called it "loose talk," and that it was indulged in about two hours before a verdict was reached. They did not specifically contradict the assertion that at least two of the jurors testified as to cases coming under their observation. It is clear that there was a general discussion of matters by the jury that were not alleged in the pleadings, nor that appear in the evidence. At least one of them admitted that he took those matters

into consideration, and any one who is acquainted with human nature must be convinced that it influenced others.

There were twelve jurors, as recited in the judgment, "Valentine White, foreman, and eleven others," but two of them did not testify on the hearing of the application for a new trial; nor is their absence accounted for. How they may have been affected by the statements is not shown. Although nine of the jurors may have thought that they were not affected by the discussion and testimony in the jury room, we do not know how it may have affected the jurors who did not testify. Yanez v. Traction Co., 126 S. W. 1176. We know one of the jurors did consider the subject of discussion in making up his verdict. We know that one or more of the jurors favored a $1,000 verdict until the discussion was had, and by some means were led to give a verdict for $10,000.

[12, 13] The discussion had and the experiences narrated in the jury room were utterly inexcusable and without pleadings or facts to justify them. In personal injury, as well as death, cases, the object sought is compensation to the injured person, or to the representatives of the dead man, and attorney's fees form no part of that compensation; and neither should the amounts paid in hospital charges or doctor's bills have been considered in this case, because not alleged or proved. But all of them were considered, and there can be no doubt that they entered into and formed a part of the verdict. These subjects were discussed in the jury room, not only as matters of opinion, but one juror gave his experience as to hospital charges and doctor's bills, and another told about what a lady had to pay as attorney's fees. That was testimony given, doubtless, in support of the opinions. We would not feel disposed to disturb a verdict in a case where one juror or two had expressed an opinion as to what the attorneys would charge for their services; but in this case all seemed to have engaged in the discussion, and at least one of them took the matters discussed into consideration in arriving at a verdict. In the case of Railway v. Gray (Sup.) 143 S. W. 606, where one or more jurors said the plaintiff should have $50,000, because the lawyers would get half, the Supreme Court said that such conduct was very reprehensible, and still sustained the verdict; but we are confident that, where there was a general discussion and testimony given by some of the jurors, and one admitted that the subjects of discussion entered into his verdict, the court would not hold that the trial judge did not abuse his discretion in overruling the motion for new trial. To hold otherwise would be equivalent to holding that the law of 1905 (article 2021, Revised Statutes of 1911), gives the district judge a discretion which cannot be reviewed by an appellate court. But, as held in the Gray Case, the discretion given in that statute is subject to review as in any other case. It may be said in this connection that, while the Supreme Court stated that one or more of the jurors spoke about the attorney's fees, the Court of Civil Appeals found that only one juror spoke of it. 137 S. W. 729.

The appellate courts of Texas have been quite lenient in dealing with the discretion of district judges in regard to misconduct of juries, and rightly so; but there must be a limit, and we think it has been reached in this case. We think this case presents a higher degree of misconduct than in any of those in which it has been held that the trial judge had not abused the discretion confided to him by the statute. In none of them did a juror admit that he allowed the amount of supposed attorney's fees, doctor's bills, and hospital charges to enter into and become a part of his verdict, but in each emphasis is placed upon the fact that each juror denied that his verdict had been influenced by the subjects discussed. We see no particular force in such denial, because the influence of such discussions is so subtle and appeals to human nature so strongly that the influence might, in some instances, be exerted without the juror being aware of it. In other instances fear of punishment at the hands of the trial judge would cause denials of influence upon the verdict. In this case, however, while the foreman of the jury denied that he had been influenced by the discussion, he admitted that attorney's fees, doctor's bills, and hospital charges were taken into consideration by him. "I did consider those facts, though, in arriving at my verdict."

If appellee had sought to introduce evidence as to what porportion of the amount of damages recovered would be given as a fee to his attorney, it would have been promptly rejected as being altogether improper as an element of damages; if he had desired to introduce the amount of his bill to his doctor or the hospital charges, it would have been denied him, because he had not pleaded them; and yet those same matters were taken up by the jurors, statements made in regard to them, and a verdict framed, into which the items must necessarily have entered and formed a part. As said by this court in Hobrecht v. Railway, 141 S. W. 579: "Jurors are sworn to try a cause according to the law and evidence, and they have no more right to hear and act upon the testimony, heard for the first time in the jury room from one of their number, than they would have to accept the law from one of their number. The oath obviously forbids that any private information should be given for the first time in the jury room, after the case has been closed, and no opportunity afforded the party to whom the evidence is antagonistic to meet it." It was recognized as far back as Green v. Hill, 4 Tex. 465, that jurors were in the habit of intruding foreign

matters, not testified to, into their counsels; for the Supreme Court said in that case: "This way of allowing jurors to rely on their own supposed knowledge of facts or the knowledge of any number of them, without being given in evidence, is believed more frequently to occur than it ought. There is danger of its growing into precedent. It is especially wrong in principle, and exceedingly pernicious in its tendency, as affording a pretense for disregarding the evidence and relying on their own supposed personal knowledge of the fact, discolored by passion and prejudice, and warped by every variety of personal feeling."

[14] If appellee was entitled to damages, they were such as arose from the different matters presented in the charge of the court, and no authority was given in that charge to consider attorney's fees, doctor's bills, or hospital charges; and yet they were all considered, and all entered into the verdict of at least one juror, and doubtless into that of others. The authority will not be given to jurors to formulate and act upon a different measure of damages from that prescribed by law and given to them in the charge of the court. It is uniformly held that it is error to permit proof of damages not alleged, and how much graver the error when matters are considered which were neither alleged nor proved. It is apparent that the discussion and evidence as to attorney's fees, doctor's bills, and hospital charges were offered to increase the damages so as to repay appellee for such expenditures; and no doubt can exist that all or a part of them were made a part of the verdict. What amount was so allowed is not ascertainable, and therefore cannot be eliminated by requiring a remittitur, as was the case in Railway v. Duelm, 23 S. W. 596, affirmed 86 Tex. 450, 25 S. W. 406. In the case of Railway v. Wesch, 85 Tex. 593, 22 S. W. 957, the judgment was reversed because the injured person was allowed to state that his expenses were approximately $750 or $800, and it was held that a remittitur would not cure the error, because it may have had influence on the general verdict. In this case the estimate of the attorney's fees and other expenses were made in the jury room, where they could not be ventilated and inquired into by a cross-examination.

Discussions and ex parte statements, such as those made in this case, have reached a limit of danger to the rights of parties, and they must be condemned and discountenanced by appellate courts. The trial courts have ample power to prevent a recurrence of such conduct upon the part of jurors by dealing out swift and rigorous punishment, and they should unhesitatingly do so. Appellate courts have no such power, but are confined to reversals, which merely protect the interests of the injured party, and which must necessarily cause delay in redressing the wrongs a plaintiff may have had perpetrated on him. By the failure to take such measures of repression in the trial courts as will prevent a repetition of such offenses, the rights, not only of defendants, but of plaintiffs, are placed at the mercy of irresponsible jurors.

Because of the misconduct of the jury, the judgment is reversed and the cause remanded.