## CRYSTAL PALACE CO. v. ROEMPKE.
### (No. 7956.)

(Court of Civil Appeals of Texas. Galveston. Jan. 5, 1920.)

**1. Negligence ☞136(15)—Negligence in leaving smooth flooring around swimming pool held a question of fact.**

It cannot be said as matter of law that it was negligence for the proprietor of a swimming pool to leave a small part of the tile flooring around the pool in a smooth condition, so that a patron slipped and was injured.

**2. New trial ☞44(3)—Should be granted for misconduct of jurors in considering items of damage not in evidence.**

It was misconduct for which defendant in a personal injury case should be granted a new trial that, as shown by testimony of jurors, not only matters of negligence not in evidence were considered by them, but items of damage not in evidence nor authorized by the charge, as hospital and doctor's charges and attorney's fees, were discussed by the jurors, and by part of them, at least, considered in making up the amount of the verdict.

Appeal from District Court, Galveston County; H. C. Hughes, Judge.

Action by W. J. Roempke against the Crystal Palace Company. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

Baker, Botts, Parker & Garwood, of Houston, Jno. L. Darrouzet, of Galveston, and McMeans, Garrison & Pollard, of Houston, for appellant.

Fuller & Brady, of Galveston, for appellee.

LANE, J. This suit was brought by appellee, W. J. Roempke, against the Crystal Palace Company, a corporation, to recover the sum of $5,150 as damages alleged to have been suffered by him by reason of the negligent construction of a certain bathing pool belonging to appellant.

The appellant, Crystal Palace Company, owned and conducted a public swimming and bathing pool in the city of Galveston. On the 3d day of September, 1918, appellee purchased a ticket from appellant which entitled him to swimming and bathing privileges. After entering the water he climbed out of the pool on a ladder situated at the northeast corner of the pool and started to walk away, and while so doing he slipped upon the wet and slick floor which surrounded the pool and fell to the floor, and in such fall he suffered the injuries of which he complains. The floor of the walk or space surrounding the pool is, in the main, of concrete, but immediately next to the pool there is a trough, called a "spit trough." This trough is constructed of tiling and is about 10 or 12 inches wide, and is so arranged as to keep water thrown upon the walkway by bathers or which would run out of bathing suits from running back into the pool. On the west side of the walkway around the pool the floor had been hacked so as to make it rough, for the purpose of preventing slipping by bathers, but at the northeast corner, where appellee slipped and fell, the floor had not been hacked, but had a smooth surface.

In the third paragraph of his petition the plaintiff alleged:

"That a considerable number of people were and had been using said pool on the date mentioned, and the activities with various people swimming and diving and otherwise disporting themselves in said pool caused the water from the pool to be splashed upon the space encircling the pool, which was used for the purpose of walking around to various portions of the pool and also for the purpose of ingress and egress to and from the pool. The water which had gathered on the walking space aforesaid had formed a slime, which, together with a substance which had gathered upon the water in the pool and which had been thrown on the walkway aforesaid, had formed a slippery slimy substance upon the surface of the walkway which had rendered passage thereon by parties bathing in the pool, without any covering upon their feet, dangerous."

And in the seventh paragraph of his petition he alleged actionable negligence on the part of the defendant in the following particulars:

"(1) The floor of the passageway was constructed of tile and smooth concrete, the surface of which was smooth and slippery.

"(2) No rubber matting or other rough material was placed on the floor covering the smooth and slippery surface of the passageway.

"(3) The water was permitted to gather on the floor, which contributed to make the floor slippery.

"(4) The number of bathers using the pool had caused slime to gather on the surface of the water, which was thrown on the walkway by the splashing and diving of the bathers, the

☞ For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

slime contributed to make the walkway exceedingly slippery.

"(5) No railing, hand strap, or other protective device was provided to support persons using the pool while walking over and around the walkway, or to which patrons might cling to prevent themselves from falling on the slippery surface of the passageway."

The defendant answered by general demurrer and by general denial.

The case was submitted to a jury upon special issues, in answer to which they returned the following answers:

"(a) That the plaintiff fell by reason of stepping on some slippery and slimy substance upon the floor surrounding defendant's bathing pool in the Crystal Palace Company bathing house.

"(b) That the defendant was guilty of negligence in permitting the slippery and slimy substance to be and remain upon the floor surrounding said bathing pool.

"(c) That such negligence was the proximate cause of injury to the plaintiff.

"(d) That the defendant was guilty of negligence in that the floor of the passageway was constructed of tile and of smooth concrete, the surface of which was smooth and slippery.

"(e) That such negligence was the proximate cause of the plaintiff's injury.

"(f) That the plaintiff was not guilty of contributory negligence which contributed to his injuries.

"(g) That $1,400 would reasonably compensate the plaintiff for the injuries sustained by him."

Upon the return of the jury's findings the court entered judgment for the plaintiff for $1,400, with 6 per cent. per annum interest thereon from the date of judgment and costs of court. Later the plaintiff entered a remittitur of $100. From the judgment against it the defendant has appealed.

By the first and second assignments it is insisted that the trial court erred in not instructing a verdict for the defendant in that the undisputed evidence shows: First, that the swimming pool and floor surrounding the same were constructed in accordance with the most recent modern engineering science, and therefore no actionable negligence was shown against it in failing to use ordinary care in the construction of the pool and floors; second, that the floor surrounding the pool was made wet by salt water being splashed thereon by bathers, and by such water dripping from the bathing suits of the bathers; that these things unavoidably occurred and continued every day during the bathing season; that such water would create a slippery condition as a necessary incident to the conduct of the pool; that at night, when the bathing for the day was over, the floor was washed and scrubbed, and therefore no negligence on the part of the appellant can be inferred from the slippery condition of the floor, if any such existed by reason of the continuous wetting of the floor; and, third, that at most appellee was an invitee, and it was not the duty of appellant to guard him against the dangers of slipping upon the floor, due to the fact that the same was wet and slippery, because such slippery condition was inseparable from the operation of the pool, a necessary incident, all of which was as open and obvious to appellee as to the appellant.

[1] We are unable to agree with any of these contentions, except that the wetting of the floor with salt water was a necessary incident of the conduct of the pool, and that such wetting would cause a slime to accumulate on the floor. There is, however, evidence showing that the floor on the west side of the pool—in fact, all the floor surrounding the pool—was hacked and made rough so as to prevent bathers from slipping, except a space of about 25 or 30 feet at the point where appellee fell and was injured. We can imagine no reason why it was not possible for appellant to make this space of 25 or 30 feet safe by the same means used for making other parts of the floor safe. There is also evidence tending to show that appellee did not discover the slime on the floor and its slippery condition until the very moment of the accident.

In view of the fact that the judgment must be reversed upon other grounds and the cause must be retried, we will not further discuss the evidence.

By the third assignment it is insisted that the verdict of the jury is contrary to the law and the evidence and against the great weight and preponderance of the evidence, in that the undisputed evidence shows that appellee, at most, was but an invitee, and that he had knowledge of the condition of the swimming pool and the nature and condition of the floor surrounding same at the time of his accident, and, knowing such facts, he voluntarily used the same to his injury.

This assignment cannot be sustained. While it is true that appellee was an invitee, we are not prepared to hold as a matter of law that the appellee knew of the slimy and slippery condition of the floor before he fell and was injured.

By the fourth, fifth, sixth, and seventh assignments complaint is made of the charge of the court and the refusal of the court to give special charges 1 and 2 requested by appellant. We have carefully examined these charges, and have reached the conclusion that the charge of the court was not subject to the complaints made thereof. In our opinion the court fairly and fully submitted to the jury, in his main charge, the issues in the case, and it was not error to refuse to submit either of the special charges requested by appellant.

By the eighth assignment it is insisted that the court erred in refusing appellant's motion for new trial, in that it was shown by

the motion and the undisputed evidence thereon that the jury was guilty of such misconduct in arriving at their verdict as should have required the court to set aside the verdict upon motion for new trial, in this:

"(a) After the jury had retired to consider their verdict, and while discussing the case, some of the jurors stated in the presence and hearing of others that they were well acquainted with the plaintiff, and that the plaintiff had a wife and little baby, and that he could reasonably earn $150 per month, thus imparting to the other jurors evidence and information not received by them during the trial of the case.

"(b) The other jurors, in discussing said case, stated that the defendant company should have had rubber mats on top of the concrete and tiling, and that by reason of the failure to have same the plaintiff should recover. This issue of negligence was not submitted for their consideration.

"(c) That other jurors gave their personal experience with reference to salt water, stating that they knew as a fact that salt water would create a slick, slimy substance, that they had seen it on the rocks, and had slipped on rocks by reason of this slick, slimy substance produced by salt water, and that by reason of said fact they were satisfied that the floor surrounding said bathing pool was slick and slimy.

"(d) That other jurors testified during their deliberations that the plaintiff was entitled to recover the sum of $450 for his injury, being the loss of three months' time at $150 per month, $450 for pain and suffering, $100 for doctor's bills, and $400 for plaintiff's lawyers; that no evidence was introduced showing that the plaintiff was entitled to recovered doctor's bills, for the reason that no evidence was introduced showing that any amount paid by plaintiff, or agreed to be paid by plaintiff, was reasonable; that no evidence was introduced showing that the plaintiff was entitled to recover for lawyer's fees, and no evidence was introduced showing that the plaintiff was incapacitated to labor for three months.

"(e) That the jurors also discussed the question of the defendant's liability in not having the pool cleaned out more than three times per week, and predicated their verdict upon such failure; that no issue of negligence was pleaded or proven based upon the defendant's not cleaning out said pool, that each and all of said statements and discussions by the jury of matters other than the evidence introduced was in violation of the orders and instructions of the court, and that said verdict was predicated upon other additional evidence than that testified to by the witnesses, and that said conduct upon the part of said jurors in their deliberations was such misconduct upon their part as entitles said defendant to a new trial, and that the said jury in arriving at their verdict took into consideration their own personal experiences, as well as statements made by other jurors, and based their verdict upon facts other than the facts testified to by the witnesses on the trial of this case."

[2] We think this assignment should be sustained. Upon a hearing of the motion for new trial nine of the jurors were called and testified. Several of them testified in effect that in arriving at their verdict they allowed the appellee $450 for lost time, $450 for pain and suffering, and that the balance of $450 necessary to make up the total sum was allowed for hospital charges, doctor's bills, and attorney's fees. They also established by their testimony the other allegations of the motion showing misconduct on their part in considering matters not in evidence.

There was no evidence whatever tending to show what amounts appellee paid or what expenses he incurred, if any, for hospital charges, doctor's bills, or attorney's fees, nor were these matters submitted by the charge of the court. The only charge submitted on the question of damages was as follows:

"At what amount do you assess damages, if any, sustained by the plaintiff? In estimating this amount, you are instructed that the measure of damages will be such sum of money as you may believe from the evidence will be a fair and reasonable compensation for the mental and physical suffering, if any, that plaintiff endured up to the time of the trial of this case as the direct and natural result of the injury, as you may believe from the evidence was sustained by him, and also a fair and reasonable compensation for the loss sustained, if any, by reason of the inability to labor, if any, on the part of the plaintiff up to the time of the trial of this case, as directly and naturally resulting from his injury."

If appellee was entitled to damages, they were such only as arose from the different matters presented in the charge of the court, and no authority was given in that charge to consider hospital charges, doctor's bills, or attorney's fees, and yet they were all considered and all entered into the verdict of at least three of the jurors, and doubtless into that of others. It is apparent, we think, that the discussion as to hospital charges, doctor's bills, and attorney's fees were advanced so as to increase the damages, and to repay appellee for such expenses, and no doubt can exist that some amount of these items were made a part of the verdict. We think the facts proven on hearing of the motion for new trial show such misconduct on the part of the jury as should have required the trial court to grant the motion.

We fully agree with the contention of appellant that, while it is true that matters presented in motions for new trial are addressed to the sound discretion of the trial judge, yet it is apparent from the conduct of the trial judge in the hearing on the motion in this case, as shown by the record, he was in no frame of mind to exercise a sound discretion, and we think that in overruling the motion he abused the discretion lodged in him, for reason of which the judgment must be reversed and the cause remanded. San Antonio Traction Co. v. Cassanova, 154 S. W. 1192; Railway Co. v. Roberts, 196 S. W.

1008; Green v. Hill, 4 Tex. 465; Hobrecht v. Railway Co., 141 S. W. 579.

That the trial court was convinced that the jury had improperly considered the matters of doctor's bill and hospital charges in arriving at their verdict, and that a part of the amount allowed was in payment of such items, cannot be successfully denied, for it is shown that before he consented to the refusal of the motion for new trial he required appellee to remit the sum of $100 of the total amount found by the jury as damages. The judge states in his qualification to appellant's bill of exception No. 3, in effect, that he required such remittitur on the theory that the sum of $100 was allowed by the jury for doctor's bill and hospital charges. We are at a loss, however, as to how he arrived at the conclusion that the $100 remitted would cover the amount found for such items, as there was no evidence tending to show what expense appellee incurred therefor.

In San Antonio Traction Co. v. Cassanova, supra, the court said:

"The appellate courts of Texas have been quite lenient in dealing with the discretion of district judges in regard to misconduct of juries, and rightly so, but there must be a limit, and we think it has been reached in this case. We think this case presents a higher degree of misconduct than in any of those in which it has been held that the trial judge had not abused the discretion confided to him by the statute. In none of them did a juror admit that he allowed the amount as supposed attorney's fees, doctor's bills, and hospital charges to enter into and become a part of his verdict, but in each emphasis is placed upon the fact that each juror denied that his verdict had been influenced by the subjects discussed. We see no particular force in such denial, because the influence of such discussions is so subtle and appeals to human nature so strongly that the influence might, in some instances, be exerted without the juror being aware of it. In other instances fear of punishment at the hands of the trial judge would cause denials of influence upon the verdict. In this case, however, while the foreman of the jury denied that he had been influenced by the discussion, he admitted that attorney's fees, doctor's bills, and hospital charges were taken into consideration by him. 'I did consider those facts, though, in arriving at my verdict.' * * *"

In Railway Co. v. Roberts, supra, the court said:

"It is not contended by appellee that the discussion by the jury of the question of attorney's fees complained of was not improper, but appellee contends that since the motion for new trial on this ground was addressed to the sound discretion of the trial judge, and his discretion having been exercised, and he, in the exercise of that discretion, having overruled the motion, the ruling is conclusive and binding on this court, even though it may be made clear to this court that the trial court abused his discretion in overruling the motion. We cannot agree to this contention by appellee, and, while we concede that this ground of the motion for new trial was a matter resting within the sound discretion of the trial judge, yet we also hold, though reluctantly, that it is made clearly to appear, by the evidence of Jurors Stephens, Day, and Murphy, and more especially by Stephens, that the trial court abused his discretion in overruling this motion."

For the reasons pointed out, the judgment is reversed, and the cause is remanded.

Reversed and remanded.