**ALBRECHT v. KOLLE et al. (No. 7011.)**

(Court of Civil Appeals of Texas. San Antonio. Oct. 31, 1923.)

New trial ⊕══44(3)—Consideration by the jury of statements by jurors as to matters not proved held to require new trial.

In an action for death of plaintiff's husband, statements made by jurors during their deliberations that plaintiff could not inherit her husband's realty, that defendant was wealthy, had been convicted and sentenced, but had paid his way out, and that 34 men at various trials had declared him guilty, none of which matters had been proved, were prejudicial, and ground for new trial, where one juror agreed to the verdict because defendant bought his way out of the penitentiary.

Appeal from District Court, Victoria County; John M. Green, Judge.

Action by Mrs. Sadie Kolle and others against Fred H. Albrecht. From a judgment for plaintiffs, defendant appeals. Reversed and remanded.

Fly & Ragsdale, of Victoria, for appellant.
Procter, Vandenberge, Crain & Mitchell, of Victoria, for appellees.

SMITH, J. Henry A. Kolle was shot and killed by Fred H. Albrecht in the course, or as a result, of a brawl occurring in Albrecht's saloon in the outskirts of the city of Victoria, on February 16, 1918. Sadie Kolle, wife of the deceased, for herself and minor children, brought suit against Albrecht for $50,000 damages, alleging that the killing was without legal justification, and warranted this civil action for damages. There was a jury trial, resulting in a general verdict of $2,500 in favor of Mrs. Kolle and $1,250 each for the four children, or a total of $7,500. Albrecht has appealed. The circumstances leading up to the killing present a sordid story, the details of which are not deemed necessary to set out in this opinion, unless and except as they may become necessary to the presentation of particular points. It may be said, generally, that Albrecht's defense was that he killed Kolle only because he believed the latter was about to take his life, or do him serious bodily harm.

As the judgment must be reversed because of the questions raised in appellant's eleventh to sixteenth assignments of error, discussion of the remaining assignments may properly be omitted. We will say with reference to them, however, that we think the testimony referred to in the first assignment as having been excluded should have been admitted, while the testimony set out in the second and third assignments was properly excluded. Stone v. Day, 69 Tex. 13, 5 S. W. 642, 5 Am. St. Rep. 17. The fourth and seventh assignments will be overruled, because

we think the testimony was sufficient to take the case to the jury, requiring the court to refuse a peremptory instruction for appellant, who makes complaint thereof in said assignments. We overrule appellant's fifth assignment of error, because the objection therein urged to the court's charge is in our opinion hypercritical. Appellant has waived his sixth assignment of error; and his seventh will be overruled, because in our opinion the rule of law therein invoked is not applicable to this case. The statements under appellant's ninth and tenth assignments of error are insufficient to support those assignments, which will be overruled. This disposes of all of appellant's assignments of error, except the eleventh to the sixteenth, which will be considered together.

In his motion for new trial, appellant attacked the conduct of the jury, and in support of his motion placed Juror Lala on the stand. This juror testified on direct examination, and sustained himself on cross-examination, that in their early deliberations the jury took a vote, which stood 8 to 4 in favor of Mrs. Kolle, and that 2 more jurors immediately went over to the majority, leaving the witness and juror Angerstein, opposed to a verdict for Mrs. Kolle. Juror Lala further testified that during the subsequent course of their deliberations some of the jurors made the several statements: (1) That (although deceased left a considerable landed estate) Mrs. Kolle, widow of the deceased, could not under the laws of Texas inherit any part of her husband's real property; (2) that appellant, Albrecht, "must be worth not less than $100,000," upon the theory that "they generally sued a man for half of what he was worth"; (3) that he was convicted and sent to the penitentiary for killing Kolle "and served a year and a half or two years"; but (4) had enough to and did pay his way out of the penitentiary before his term was out, "so he ought to be in favor to help Mrs. Kolle, if he had money to pay his way out;" (5) that Albrecht's saloon "was a roughhouse all the time"; (6) that 34 men had already declared him guilty in that the first 12 men had convicted him of murder in this very transaction; and (7) that the next 12 men were in Mrs. Kolle's favor last spring (there had been a previous trial of this cause), and now 10 men are for Mrs. Kolle (it appearing that at the time the statement was made 10 of the jurors were for and 2 against rendering a verdict for appellee).

None of the jurors other than Lala testified, nor was their absence accounted for, and hence his testimony stands uncontradicted. Of course none of the facts embraced in these statements were either pleaded, or proven upon the trial of the cause, nor could they have been properly pleaded or proven, and, of course, they were therefore improperly before the jury. So, the question arises: Were the objectionable statements of a nature calculated to influence the jury, or did they in fact influence the jury in reaching the verdict rendered by them? If so, then the verdict should have been set aside by the trial court. No analysis is necessary to show that some of the statements made in the jury room were inflammable in their nature, and that because of their insidious injection into the deliberations of the jury, the jurors, being human, were probably more or less influenced by them to the prejudice of Albrecht, at whom they were directed. Moreover, Juror Lala testified in effect that the statements, or some of them, did in fact cause him, if not Juror Angerstein also, to finally agree to the verdict rendered. After testifying that one of the jurors stated to the jury that 34 men had previously found against Albrecht, as heretofore shown, Juror Lala further testified that—

"That statement [as to the 34 men] did not exactly bring me over on that side, but it made me feel like I was probably wrong; it sort of shook me, and the final blow was next morning, when some one told me that Albrecht paid his way out of the pen. Then I agreed to the verdict."

We think the circumstances are such as to require the reversal of the judgment based on a verdict so arrived at. Green v. Hill, 4 Tex. 465; Traction Co. v. Cassanova (Tex. Civ. App.) 154 S. W. 1190. The language of Mr. Justice Lipscomb, in the case first cited, is quite appropriate here:

"This way of allowing jurors to rely on their own supposed knowledge of facts, or the knowledge of any number of them, without being given in evidence, is believed more frequently to occur than it ought. There is danger of its growing into precedent. It is especially wrong in principle, and exceedingly pernicious in its tendency, as affording a pretense for disregarding the evidence, and relying on their own supposed personal knowledge of the fact, discolored by passion and prejudice, and warped by every variety of personal feeling."

The judgment is reversed and the cause remanded.