## GULF, C. & S. F. RY. CO. v. YOUNG.
### (No. 9503.)

(Court of Civil Appeals of Texas. Dallas. April 10, 1926.)

**1. Master and servant ⚖==286(1)—Negligence as to trucker in freight depot held for jury.**

In action for injuries to trucker in freight depot, evidence *held* sufficient to require submission to jury of question as to defendant's negligence.

**2. Commerce ⚖==27(5)—Trucker in freight depot, injured while handling shipment in course of transportation from Texas to Mexico, held engaged in interstate commerce within federal Employers' Liability Act, notwithstanding break in transportation at border by reason of revolution in Mexico (U. S. Comp. St. §§ 8657–8665).**

Trucker in freight depot, injured while handling shipment being transported from Dallas, Tex., to Monterey, Mexico, *held* engaged in interstate commerce, within federal Employers' Liability Act (U. S. Comp. St. §§ 8657–8665), notwithstanding, because of revolution in Mexico, shipment was moved on local bill of lading from Dallas to Laredo, Tex., and shipment moved across border by truck, where new bill of lading was procured.

**3. Master and servant ⚖==204(1) — Common-law defense of assumed risk available under federal Employers' Liability Act (U. S. Comp. St. §§ 8657–8665).**

Under Federal Employers' Act (U. S. Comp. St. §§ 8657–8665), the common-law doctrine of assumed risk applies to injury to trucker in freight depot while engaged in interstate commerce.

**4. Master and servant ⚖==288(2)—Facts held not to show injuries to trucker in interstate commerce resulted from risk of employment, which he assumed as matter of law.**

Facts *held* not to show that injury to trucker in freight depot, caused when piece of freight moving in interstate commerce fell on him when wheel of truck broke, resulted from risk of employment, which he assumed as matter of law, barring recovery.

**5. Evidence ⚖==571(9)—Expert testimony on question of loss of sexual power resulting from injuries should be treated as testimony of any other credible witness, on fact within common knowledge of mankind, in view of layman's inability to show that such loss would result from injury.**

Since testimony of layman would be insufficient to show that plaintiff's loss of sexual power resulted from injuries, expert testimony on such issue should be treated as testimony of any other credible witness bearing on any other fact within common knowledge of mankind.

**6. Damages ⚖==208(2)—Issue of loss of sexual power resulting from injuries received through negligence of master held improperly submitted to jury.**

Servant suing for injuries caused by alleged negligence of master *held* to have failed

to show that his loss of sexual power resulted from such injury, especially in view of evidence that it might have occurred from other causes, and submission of loss of sexual power as one of elements of damages, for which recovery could be had, was error.

**7. Evidence ☞127(1)—Testimony that personal injury plaintiff complained to witnesses that his side hurt, and about getting hurt, held inadmissible, as they only described plaintiff's ailments to witnesses.**

In personal injury action, admission of evidence that plaintiff complained of having been hurt, that he would feel bad at night, and complained of his side, *held* error, as they only described his ailments to the witnesses.

**8. Evidence ☞127(4).**

Exclamations or complaints, which are spontaneous manifestations of distress or suffering, are admissible as original evidence, under ordinary application of rule of res gestæ.

**9. Evidence ☞128—Descriptive statements of sick or injured person are admissible only when made to medical attendant or nurse, or when relating to existing pain, or when such attendant or nurse gives conclusion based in part on such statements.**

Descriptive statements of injured person are admissible only when made to medical attendant or nurse for purposes of medical treatment, or when they relate to existing pain from which person is then suffering, or when medical attendant or nurse is called on to give conclusion based in part on such statements, and is explanatory to conclusion of such medical attendant or nurse.

**10. Damages ☞165—Admission of evidence that personal injury plaintiff had taken out life insurance policies, and had two medical examinations, held error.**

Admission of testimony in personal injury action that plaintiff had taken out policies of life insurance, and had taken two physical examinations as required by insurance companies, *held* error.

**11. Witnesses ☞370(1)—Evidence of difficulty between plaintiff and defendant's witness is admissible to show witness' biased feeling or partiality of witness.**

Evidence of difficulty between plaintiff and defendant's witness and cause of such difficulty is admissible to show biased feeling or partiality of witness to parties of litigation.

**12. Witnesses ☞373—Party cannot introduce evidence showing bias of witness, who has testified for other side, unless witness has been previously questioned as to such matter.**

Where witness has been examined on one side, opposite party cannot introduce evidence showing witness' biased feeling or partiality towards parties, unless witness has been previously questioned himself as to such point.

**13. Witnesses ☞373—Admission of plaintiff's testimony as to difficulty with defendant's witness, who had testified, and details thereof, held error, where such witness was not interrogated as to such difficulties.**

Admission of testimony of plaintiff as to having had difficulty with defendant's witness, who had testified, and details of such difficulty, *held* error, where proper predicate had not been laid by first inquiring of defendant's witness as to whether such difficulty had occurred and the cause thereof.

**14. Master and servant ☞264(2)—Evidence of foreman's refusal to send injured employé to doctor held inadmissible, there being no allegation that such refusal aggravated or contributed to injuries.**

In trucker's action for injuries, testimony that defendant's foreman refused to send plaintiff to company's doctor was not admissible on issue of negligence vel non or extent of injuries alleged to have been received, because of defendant's negligence, where it was not alleged that foreman's refusal to send plaintiff to doctor aggravated or contributed to the injuries.

**15. Evidence ☞125—Evidence that employé immediately after, and at place of injury, requested order of foreman to go to doctor, and that request was refused, held admissible on issue as to whether or not employé was injured at time and place alleged.**

Evidence that employé immediately after, and at place of injury, asked foreman for order to go to doctor, and that foreman stated that employé did not need to go to a doctor, was admissible as bearing on issue whether or not employé was injured at time and place alleged by him.

**16. Evidence ☞539—One engaged in trucking eight or nine years, who had moved heavy pieces of freight on truck, held qualified to express opinion as to probable result of attempt to move with truck such as used by injured employé piece of freight weighing about 1,500 pounds.**

In action by trucker for injuries when piece of freight weighing about 1,500 pounds fell on him on wheel of truck breaking, witness who testified that he had trucked eight or nine years, and had moved heavy pieces of freight on truck, *held* qualified to express his opinion as to probable result of attempt to move with truck such as used by plaintiff a piece of freight weighing about 1,500 pounds.

**17. Master and servant ☞264(2)—Evidence of condition of passageway, though not alleged, held admissible to explain cause of freight falling from truck and injuring trucker.**

In action by trucker for injuries from piece of freight falling on him on wheel of truck breaking while freight was being moved over passageway, testimony that passageway was made out of plank, had holes in it, and was not like a smooth surface, though inadmissible as basis for recovery because condition of passageway was not alleged as ground of negligence, was admissible in explanation of cause of freight falling from truck and for purpose of accounting for breaking of truck wheel.

**18. Appeal and error ☞1069(1)—Discussion of jurors, in action for injuries alleged to have caused hernia, as to attorney's fees which plaintiff would have to pay, and rupture which one of jurors had sustained, held to require new trial.**

In action for injuries alleged to have caused hernia, discussion of jurors after retirement

---

as to attorney's fees which plaintiff would have to pay, and effect of rupture which one of jurors had sustained, and consequent suffering, *held* to require new trial.

Appeal from District Court, Dallas County; Kenneth Force, Judge.

Action by Gus Young against the Gulf, Colorado & Santa Fé Railway Company. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

Terry, Cavin & Mills, of Galveston, W. P. Donalson, of Dallas, and Lee, Lomax & Wren, of Fort Worth, for appellant.

Harmon & Harmon, of Dallas, for appellee.

VAUGHAN, J. Appellee, Gus Young, as plaintiff, instituted his action in the court below to recover of appellant railway company damages for an alleged hernia and loss of sexual power as the consequence of certain personal injuries received by him while in appellant's service as a trucker in its freight depot at Dallas, April 10, 1920.

Briefly, appellee in substance alleged that on or about the 10th day of April, 1920, he was an employé of appellant, and, on said date, while in the discharge of the duties of his employment as a trucker, at and about its freight depot, he was negligently and carelessly ordered, permitted, and required by appellant, its agents, servants, and employés, in charge of the movement of its freight and in its freight department at Dallas, to move and transfer a certain piece of cotton machinery weighing about 1,500 pounds; that, while in the performance of said service, he, through the negligence of appellant, received personal injuries, which caused a rupture in his right side, great pain and suffering, loss of time, and loss of sexual power, thereby permanently injuring him, to his damage in the sum of $10,000.

As to the grounds of negligence, appellee in substance alleged that appellant was guilty of negligence in furnishing a defective truck, in requiring appellee to move a piece of machinery which was improperly crated, in failing to furnish appellee with sufficient help, and in failing to furnish appellee with suitable tool and carriage with which to handle the machinery, which suitable tool and carriage appellant was able to provide, and had on its premises before and at the time he received the injuries complained of. The last-mentioned allegation manifestly has reference to a "dolly," which is ordinarily used to move shipments of large bulk or of extra heavy weight.

In addition to a general denial, appellant pleaded specially as follows: (a) Latent defect in the truck used by appellee; (b) assumed risk as to the truck used by appellee on the occasion of his injuries, as to the alleged failure to furnish a suitable tool and a suitable and modern carriage or appliance with which to do the work, that the piece of machinery which appellee was engaged in moving was improperly crated, was received for shipment in an improper, unsafe, and dangerous condition to be handled for transportation, and that appellant failed to furnish appellee with sufficient help; (c) that appellant and appellee were engaged in interstate commerce, and appellee's cause of action, if any, arose under the Employers' Liability Act of the United States of America (U. S. Comp. St. §§ 8657–8665).

The cause was submitted to a jury on special issues, and, on the answers of the jury thereto, judgment was rendered on the 9th day of October, 1924, in favor of appellee for the sum of $3,500, from which this appeal was prosecuted, and presented to this court by appropriate assignments of error.

[1] We do not think the court erred in refusing to dispose of the case by way of the peremptory instruction requested by appellant, as the evidence which, in view of another trial, will only be meagerly discussed was sufficient to require the cause to be submitted to the jury: (a) On the question of injury; and (b) actionable negligence vel non.

That appellee sustained a hernia on the occasion and in the manner alleged by him, and suffered damage to some appreciable extent therefrom, there can be no question. As to the issue of negligence, while it may be conceded that the evidence as a whole is not so reassuring, yet it is sufficient to present a question of fact for determination by the jury. In brief, the facts upon this issue may be summed up as follows:

Appellee was in the employment of appellant as a trucker of freight, to load and unload freight from and into its cars and freight house. He had been engaged in such service for a period of about twelve years with appellant and other railway companies. He was instructed by the foreman in charge of the work to move a piece of freight weighing about 1,500 pounds from the freighthouse to be loaded into a freight box located on the third track from the freighthouse. On being so directed, he inquired of the foreman if he wanted a "dolly," referring to the appliance commonly used for the moving of bulky or heavy articles of freight. To this query the foreman replied, "No, you may use a truck," a device for the moving of objects of ordinary weight, so generally well known and understood that a description is unnecessary. Acting upon the instructions, which were repeated to another employé engaged in the same service with appellee, a truck was used, the heavy piece of mill machinery safely placed thereon, four employés being necessary for that purpose. The crating around this piece of freight had one piece of plank extending therefrom about six inches. The foreman designated one other truckman, Lonnie Martin, to assist appellee in moving the freight after

same had been placed on the truck. They had safely passed through the two intervening freight boxes, and were in the act of entering the freight box in which said freight was to be loaded for transportation, when, in an effort to place said freight therein, the right wheel of the truck broke down, causing said freight to fall against appellee, the projecting end of the crating striking him in the side, and pinning him down to the platform connecting the two cars, producing, as found by the jury, the hernia as alleged by appellee. The first two bridges between the freight boxes were smooth iron; the third one was a large board with a piece across each end to keep it in place, and had lots of holes, which caused the truck in being rolled over it to jerk from side to side; that, while such heavy machinery had been successfully moved from and into freight boxes by means of a truck, yet that was not the proper appliance to use in loading such heavy machinery; that the only safe way to move such heavy freight is with a "dolly"; that an article weighing 1,500 pounds is an extra heavy piece of freight; that a "dolly" has four rollers on it. Some of them have two or four wheels, and some have just one. They are constructed so they can turn easily. The rollers are so constructed that same will support a very heavy load, and freight can be transported on a "dolly" without slipping, as it will hold freight in a steady position while being operated.

We think this was sufficient to require the cause to be submitted to the jury only as to the injuries resulting in the hernia, but, as will later be demonstrated, not as to the other ground on which the right to recover damages is based. Accordingly the assignment based on the refusal of the court to instruct the jury to return a verdict for appellant is overruled.

[2] The shipment being handled by appellee at the time of his alleged injuries was under the facts interstate in character. The property constituting the freight had been received from, and was under transportation by, appellant from Dallas, Tex., to Laredo, Tex. The bill of lading and waybill issued therefor showed the origin of the shipment to be Dallas, and the destination, so far as said instruments were concerned, Laredo, Tex., but were in fact destined for Monterey, Mexico; the bill of lading containing the following provision:

"Consigned to order of Krueger Machinery Company, Destination, Laredo, State of Texas. Notify Monterey Street Railway Light & Power Company at Laredo, State of Texas, Route, I. & G. N."

The property was bought for and to be used by the Monterey Street Railway Light & Power Company in the conduct of its business in the republic of Mexico, and, after said shipment reached Laredo, Tex., it was transported by truck from the freighthouse of the Texas & Pacific Railway Company, appellant's connecting carrier, to the Mexican custom house at Nuevo Laredo, Mexico, through which it passed, and was then shipped by express to Monterey, its place of destination. Immediately on reaching Laredo, the movement of said freight was directed by Geo. E. Teunnison, forwarding agent at Laredo for some mining companies in Mexico, who testified that "we had special instructions on this shipment to forward it by express from Laredo, Tex., on account of the traffic conditions in Mexico at that time"; that he had no instructions to hold the shipment at Laredo, Tex., but had been requested to hurry it forward; that at the time of the shipment of the machinery in question there had been no through freight traffic into Mexico for some time, and it required the intervention of some one there to get it through the custom house. The shipment remained in this country about 24 hours after it was received at Laredo. A revision had to be made according to the Mexican classification. It had to be taken to the warehouse, examined, and classified, and papers made out accordingly before it could pass over into Mexico. After it reached Mexico, a new bill of lading and a new waybill was issued by the Mexican Central Railroad Company to Monterey, Mexico. While the shipment was carried across into Mexico on a truck, it was carried to Monterey by rail. In the movement of this freight it was never intended that its point of destination should be in Texas, but, to the contrary, that through continuous movement its destination was intended to be, and it was shipped for the purpose of being delivered to the purchaser at Monterey, Mexico. Under the facts, this shipment clearly comes within the doctrine announced by the following authorities: Texas & N. O. R. Co. v. Sabine Tram Co., 227 U. S. 111, 33 S. Ct. 229, 57 L. Ed. 443; Pa. Ry. Co. v. Clark Bros. C. M. Co., 238 U. S. 456, 35 S. Ct. 896, 59 L. Ed. 1406; United States v. Ill. Cent. Ry. Co. (D. C.) 230 F. 940, 941, from which last case we quote the following as being applicable to the facts of this case:

"It is well settled that the intention of the shipper as to the ultimate destination at the time the freight starts is the test of its character, regardless of whether the voyage is temporarily broken, more than one carrier transports it, or it moves on through or local bills of lading."

To the same effect see the holding in the case of McFadden v. Ala. Gt. So. Ry. Co., 241 F. 569, 154 C. C. A. 338.

The shipment in question was clearly interstate, unless the mere fact that it moved on a local bill of lading from Dallas to Laredo, Tex., changed its character. The local bill was issued from necessity, because of

the revolution then in progress in Mexico. It was the intention of the shipper at all times that this machinery, just as expeditiously as possible, should be transported, as it was in fact, from Dallas, Tex., to Monterey, Mexico. The 24 hours' delay at Laredo, wherein it was necessary to move the machinery across the border by truck and procure a new billing at Nuevo Laredo, was, as suggested in T. & N. O. R. Co. v. Sabine Tram Co., supra, "a mere 'accident' (incident) in the ordinary international transportation of all shipments from Texas to Mexico."

We therefore hold that, because of his employment, appellee and appellant were engaged in interstate commerce at the time the alleged injury occurred. In support of this holding, see Hines v. Wicks (Tex. Civ. App.) 220 S. W. 581, holding that a baggage handler, injured while moving a trunk being transported between interstate points, was engaged in commerce of that character. G. C. & S. F. Ry. Co. v. Drennan (Tex. Civ. App.) 204 S. W. 691:

"When lumber is loaded in a car in one state and shipped to another state, an employé unloading the lumber at destination was engaged in interstate commerce."

[3, 4] Appellee and appellant being engaged in interstate commerce at the time in handling of the freight through which he claims to have received the injuries for which he seeks to recover, the common-law doctrine of assumed risk applies. However, upon the facts as disclosed by the record of the evidence introduced in the trial court, we cannot say that such injuries resulted from the risk of his employment, which he assumed as a matter of law, and, therefore, not entitled to recover, but, to the contrary, the facts fail to disclose that appellee knew when he attempted to move the freight in question for the purpose of loading in the car in which it was to be transported that the truck he was directed by the foreman to use was inadequate for the task, in that the heft of the freight was probably sufficient to crush or break a wheel of the truck, or that the manner in which said piece of freight was crated rendered the handling of same dangerous to his safety, or that a "dolly" was the only appliance by which it could be with reasonable safety moved for the purpose of being loaded.

Appellant cites the case of M. C. & G. Ry. Co. v. Black (Tex. Civ. App.) 176 S. W. 755, in support of its proposition that, if appellee was injured as alleged, such injuries resulted from the risk of his employment which he in law assumed. That case was resolved against Black on the doctrine of knowledge of the danger of that which he undertook to do, and, in applying that rule of decision to the facts, which clearly established that he knew it was dangerous to undertake the performance of the service he had been di-

rected by his foreman to do, it was properly held that no liability existed against the master. In the instant case, while the same rule of law applies, the facts do not show that appellee knew it was dangerous for him to undertake to move the freight in question by means of a truck, or that the manner in which the freight was crated rendered the same dangerous to be moved by means of a truck for the purpose of being loaded, or that a "dolly" was the only safe means of conveyance for the purpose of loading said piece of freight.

Appellant objected to the submission to the jury of special issues Nos. 1 and 2, because they "permitted the jury to find that plaintiff's alleged loss of manhood or sexual power was the proximate result of the accident alleged in his petition; there being no sufficient evidence to warrant the submission of any such issue."

The ninth paragraph of appellee's first amended petition upon which the case was tried alleged that "all of the organs of the lower part of his body, particularly those in the region of his back and hips and in the region of his pelvis, and all of the nerves passing through the pelvis, including posteria and frontal regions thereof, were bruised, torn, strained, and destroyed, thereby destroying the sexual desire of this plaintiff, and thereby damaging him as herein alleged." The issues and answers of the jury thereto presenting this phase of the case under consideration were as follows:

Question No. 1. "Did the plaintiff receive any of the injuries complained of in his petition?" Answer: "Yes."

Question No. 2. "If you have answered question No. 1 in the affirmative, then state were the injuries, if any, of the plaintiff the direct and proximate result of the negligence of the defendant?" Answer: "Yes."

In answer to question No. 3, the jury found appellee was not guilty of contributory negligence; in answer to question No. 5 found that appellee's injuries were not the proximate result of the risk which he had assumed; and in answer to question No. 7 awarded appellee $3,500 as compensation for the injuries received as the result of appellant's negligence.

On this issue the evidence reveals the following state of facts: That prior to, and at the time of, his alleged injuries appellee was 32 years of age, of strong physique and robust health, and was possessed of extraordinary sexual power; and, further, that he was guilty of excessive indulgence in the abuse and use of that power; that in 1908 or 1909 he had a venereal disease, since which time he has not been treated for any character of venereal disease; that soon after receiving the injuries as alleged appellee discovered a decrease in his sexual power, amounting almost to a loss thereof.

Although appellee, by the allegations of his petition presenting this as one of the elements of his claim for damages, injected into the case the scientific question as to what was the proximate cause of the loss of his sexual power, the burden thus assumed by him was not discharged merely by the proof of the sudden decrease of that power. He did not call to his aid medical testimony, but was content to rest his case, in so far as establishing the scientific question involved, upon the evidence introduced establishing the above facts, which facts failed to show a relation between the injury and the disability in question, unless it be that of proximity in point of time, but this coincidence loses its force by virtue of the uncontradicted medical testimony introduced by appellant to the effect that neither the rupture on one side, nor the operation to relieve it, even if same had been negligently performed, would affect the reserve power and mechanism which nature provided on the uninjured side of appellee's body. The physician who performed the operation on appellee for the hernia, Dr. G. B. Brindley, testified:

"I performed the operation. The operation which was performed on him was the usual operation for hernia. There were no complications following the operation. I have operated on 250 or 300 hernias. I have never, in all my experience as a physician and surgeon, seen a case of hernia which was operated on which had anything to do with lost manhood. The loss of sexual power often follows venereal diseases."

He further testified that the injuries received by appellee could not have produced the loss of appellee's sexual power; that he did not think the accident had anything to do with it; in fact, could not have produced that effect without there had been evidence of nerve impairment. In reference to this he testified:

"I think I am in position to tell the jury that there was no nerve impairment. We found no evidence of it."

[5] As to the value of expert testimony, we think the rule stated in the case of Moratsky v. Wirth, 74 Minn. 146, 76 N. W. 1032, by the Supreme Court of Minnesota clearly demonstrates the value of same as well as the proper application thereof, being not only a reasonable, but a just, rule of construction and application:

"The ordinary function of experts is to assist, by their superior knowledge, the jury in reaching a correct conclusion from the facts in testimony before them. Their opinions are not, as a rule, conclusive upon the jury, but mere items of evidence for the consideration of the jury. But in a case where the evidence, and the facts to be deduced therefrom, are undisputed, and the case concerns a matter of science or specialized art or other matter, of

which a layman can have no knowledge, the jury must base their conclusion upon the testimony of the experts."

To the same effect on principle is the opinion of the Supreme Court of Nebraska in Flege v. State, 93 Neb. 610, 142 N. W. 276, 47 L. R. A. (N. S.) 1106. Expert evidence was made necessary by reason that the injuries in this respect claimed to have been sustained by appellee were not sufficiently obvious, and could not be made so by the testimony of a layman or one not scientifically advised along the lines of descriptive anatomy especially as to the correspondence existing between the parts embraced within the term "anatomy" as applied to a human being, so as to enable the witness testifying to state the effect that such an injury would have upon the genital organs, nerves, etc., forming a part thereof, without which evidence the jury necessarily would be without aid to arrive at a verdict that would reflect the true and exact conditions created by the injuries alleged to have been received by the appellee producing this result as claimed by him. Therefore, in this state of the case, as to this particular issue, expert testimony should be treated as the testimony of any other credible witness bearing upon any other fact within the common knowledge of mankind.

[6] The burden of proof being on appellee to show that his alleged injuries were negligently caused by appellant, it was not enough to show that this particular result might have, or could have, flowed from the alleged negligence, in that, from the proximity of the injuries received and the change in appellee's condition, same might have been the result thereof. Especially so as the evidence introduced by appellee shows that it might have occurred from other causes than the alleged acts of negligence on the part of appellant, to wit, the venereal disease contracted by appellee, and the excessive abuse of his sexual power. Therefore the evidence introduced had not the probative effect necessary to show that the negligence of appellant did cause this alleged injury.

Appellee's evidence on this issue brought him within the rule that when a plaintiff produces evidence that is consistent with a hypothesis that defendant is not negligent, and also with one that he is, his proof tends to establish neither. Louisville & N. R. Co. v. East Tenn. V. & G. Ry. Co., 60 F. 993, 9 C. C. A. 314, 22 U. S. App. 102, 114.

We therefore sustain this assignment, and hold that the court erred in submitting the loss of sexual power as one of the elements of damages for which a recovery could be had.

[7-9] By appropriate assignments of error appellant complains of the admission of the following testimony introduced by appellee:

The following question was propounded to and answered by the witness Ada Carter:

"Now tell the jury whether or not he complained—what did he complain of? Answer: Getting hurt.

"Question: Well, did he complain that there was anything the matter with him? Answer: Yes."

And also of the testimony of the witness Hattie Cole: "He said he would feel so bad at night," and the testimony of the witness Mrs. H. C. Broderick to the effect, "He told me about the accident, and complained of his side," which was duly objected to on the ground that same was hearsay, self-serving, did not constitute a complaint of existing pain, was no part of the res gestæ, and wholly irrelevant, immaterial, and incompetent for any purpose. The objections to the admission of this evidence should have been sustained; same only describing appellee's ailments to the witnesses, and not being an expression of then existing pain from which he was suffering at the time the respective statements were made.

The rule of evidence governing the introduction of statements of this character is that "the exclamation or complaints which are the spontaneous manifestations of distress or pain or suffering are admissible as original evidence under the ordinary application of the rule of res gestæ." There exists, however, a well-defined distinction between one describing his ailments to a witness and a declaration showing then-existing pain and suffering. As to the admission of descriptive statements in evidence, the following rule controls:

"But the mere descriptive statements of a sick or injured person can be admitted in evidence only when made (1) to a medical attendant or nurse for purposes of medical treatment, or (2) they must relate to existing pain or other symptoms from which the person is then suffering, and (3) such statements or explanatory symptoms are admissible when the medical attendant or nurse is called upon to give a conclusion based in part upon them, and is explanatory to the conclusion of such medical attendant or nurse."

The evidence of the witnesses under discussion should have been excluded as not being admissible under either of the above rules. Railway Co. v. Shaw, 203 Ill. 39, 67 N. E. 374; Railway Co. v. Sanders, 12 Tex. Civ. App. 5, 33 S. W. 245; Williams v. Railway, 68 Minn. 55, 70 N. W. 860, 37 L. R. A. 199; Railway v. Martin, 26 Tex. Civ. App. 231, 63 S. W. 1089. We therefore sustain the assignments addressed to the admission of the testimony of said witnesses.

[10] Appellee was permitted over proper objection to testify that he had taken out three policies of life insurance since the year 1909, and had taken two physical examinations, as two of the companies required physical examinations, which testimony was objected to upon the ground that the circumstances that appellee had taken out life insurance and had two physical medical examinations would not tend to prove his physical condition with respect to the injuries alleged in his petition, and was wholly irrelevant, immaterial, and incompetent. These objections should have been sustained. The question before the court as to the physical condition of appellee was not what it had been, in so far as being able to obtain life insurance or to stand a physical medical examination for that purpose, but: (1) Whether or not he had received injuries alleged by him through the negligence of appellant; and (2) whether or not the injuries alleged to have been sustained by him on account of such negligence in fact had been sustained, the extent and duration thereof, and it was original testimony that should have been introduced bearing upon said issues so that the right of cross-examination so valuable to litigants could have been exercised.

We think the rule announced in the case of Trudden v. Metropolitan Life Ins. Co., 50 App. Div. 473, 64 N. Y. S. 183, is applicable to this case. The cause of action in the cited case was based upon the policy of insurance issued by defendant. Proofs of death covering the same risk in other companies were offered in evidence. As to this the court observes:

"They could not be evidence against the insured in favor of this defendant. Primary testimony as to the cause of death in such case would be required, as there is no statute authorizing their admission in evidence, nor is any authority called to our attention holding them to be competent. Neither is it competent to prove a rejection of the insured, as showing his physical condition, on an application for insurance, by the physician of another company making the examination. If the defendant desires to avail itself of proof respecting such subjects, it must show the condition of the insured by the person who had knowledge thereof, as the fact of rejection, assuming it to exist, would prove nothing."

This assignment is, therefore, sustained.

On a material issue there was a sharp conflict in the testimony of appellee and E. A. Reese, a witness for appellant, and, while appellee was testifying in his own behalf, having stated that a difficulty had come up between him and said witness Reese, appellee's attorney then requested him to state the cause of the difficulty. Appellant objected because the details of such difficulty were not material on any issue in the case; that no predicate had been laid for any impeachment or contradiction in this respect. This objection was overruled, and the witness stated:

"His wife wrote a letter here about me to Ada Carter, not directed to me.

"Question: She wanted some money to come

up here on; she wanted to quit her husband? Answer: Yes."

Whereupon appellant renewed its objection that the testimony that she wanted to quit her husband was secondary and prejudicial to appellant, wholly irrelevant, immaterial, and incompetent for any purpose, which was also overruled.

The witness Reese, in answer to cross-interrogatories propounded by appellee, testified: "I did not write Gus Young on or about the 5th day of September, 1921, and I know nothing about the letter you refer to," and Isabella Reese, the wife of E. A. Reese, testified: "I haven't written Gus Young any letters."

[11] Appellee did not lay any predicate for the introduction of this evidence by first inquiring of the witness Reese as to whether or not there had occurred a difficulty between him and appellee, and, if so, to state the cause of the difficulty. This evidence was admissible to show the bias, feeling, or partiality of the witness Reese towards the parties to the litigation.

[12, 13] The common-law rule upon the subject, which we think is the most wholesome one, and should be adhered to, is to the effect that, "where a witness has been examined on one side, it is not competent for the opposite party to introduce evidence to shew his bias, feeling or partiality towards the" parties, "unless the witness has been previously questioned himself as to that point." Edwards v. Sullivan, 30 N. C. 302; Galveston, H. & S. A. Ry. Co. v. La Prelle, 22 Tex. Civ. App. 593, 55 S. W. 125. It may be urged that the witness Reese had been questioned as to the difficulty between him and appellee, in that he had stated in reply to an interrogatory that he did not write appellee a letter on or about September 5, 1921, and knew nothing about the letter referred to. This did not constitute an inquiry in reference to a difficulty that had occurred between said witness and appellee or as to the cause thereof. The sharp conflict between the testimony of the witness Reese and appellee made it necessary for the jury to pass upon the credibility of their testimony, and appellant, without having the benefit of the testimony of the witness Reese introduced in due order in reference to the "difficulty," was placed in a position for the jury to draw from the testimony of appellee, as introduced, without laying a proper predicate therefor, that Reese was so biased in favor of appellant or prejudiced against appellee that his testimony was not entitled to equal credibility with that of appellee, with the result that in determining this conflict between said witness and appellee greater effect or weight in all probability was unduly accorded appellee's testimony. We therefore sustain this assignment.

[14] Appellee was permitted, over the objection of appellant, to testify that he called on appellant's foreman, Mr. Patterson, for an order to see the company's doctor for medical attention; that he refused his request, stating, "There is nothing the matter with you, negro, you had better go on and get to work, or I will turn your nose up," to which appellee replied, "I am sick"; the foreman answering thereto, "You do not need to go to no doctor"; appellee replying, "Yes, I do," which was objected to on the ground that same was self-serving and hearsay, constituting no part of the res gestæ, was wholly incompetent, irrelevant and immaterial for any purpose, and prejudicial to the rights of appellant. This evidence was not admissible as bearing upon the issue of negligence vel non, or the extent of the injuries alleged to have been received by appellee on account of the acts of negligence charged against appellant, as it was not alleged that the refusal of appellant's foreman to send appellee to a doctor aggravated the injuries or contributed in any respect to the result of the injuries alleged to have been sustained.

[15] Only the following portion of the evidence objected to should have been admitted: "I went to him (referring to Mr. Patterson, the foreman) and asked him for a slip to go to the doctor, I says, 'I am sick.' He said, 'You do not need to go to no doctor.'" Appellee's reply: "Yes, I do"; the witness having testified that these statements were made immediately after receiving the injuries as alleged by him, and while at the place same were received. Therefore, same was admissible as bearing upon the issues as to whether or not appellee was injured at the time and place as alleged by him. St. L., B. & M. Ry. Co. v. Watkins (Tex. Civ. App.) 245 S. W. 798.

[16] Appellee propounded to his witness Howard Douglass the following question: "Tell the jury whether or not the heft of the machinery weighing about 1,500 pounds on those iron wheels (referring to the iron wheels of a truck like the plaintiff was using) would affect it in any way at all," which said witness answered that under such circumstances a truck was liable to break down if the load was too heavy. Appellant objected to the question and the answer sought to be elicited thereto, on the ground that the question called for the surmise, speculation, and conclusion of the witness, and was irrelevant, incompetent, and immaterial for any purpose, which objection was by the court overruled.

The witness was not working for appellant at the time of the accident in question, though he had previously been employed by appellant as a trucker in its freighthouse. He was acquainted with the trucks used by appellant. He testified that the model before the jury was a model of the trucks used by appellant; that he had trucked eight or nine years, and had moved heavy pieces of freight on trucks; that he had handled most all kinds of heavy stuff; that he had moved heavy articles of freight.

We think the evidence reveals such experience on the part of the witness in the use of trucks in handling light and heavy articles as a trucker in the loading and unloading of freight to show that he was qualified to express his opinion as to what would in all probability be the result of an attempt to move with a truck, such as was being used by appellee, a piece of freight weighing about 1,500 pounds, as the general knowledge thus acquired was sufficient to enable him to formulate an opinion as to what would be the probable result of attempting to move an article of freight, the weight of which was in excess of the load such a truck was supposed to carry with safety. This objection is, therefore, overruled. M., K. & T. Ry. Co. v. Pettit, 54 Tex. Civ. App. 358, 117 S. W. 896.

[17] Lonnie Martin, a witness for appellee, was permitted, over the objection of appellant, to testify that the passageway over which the piece of freight was being moved by appellee at the time of his alleged injuries "was made out of plank, had holes in it, and had a piece across the end to keep the board in place and keep it from sliding; that it was not like a smooth surface, and made the wheels go this way and that way when the wheels hit the holes," to which objection was made on the ground that no predicate had been laid for the introduction of such testimony in appellee's petition and the testimony was, therefore, wholly irrelevant, immaterial, and incompetent for any purpose. The condition of this passageway is not alleged as one of the grounds of negligence. Therefore, this evidence was not admissible as a basis for recovery. However, we think same was admissible in explanation of the cause of the piece of freight falling from the truck and pinning appellee against the car box, which produced the injury complained of, or for the purpose of accounting for the breaking of the truck wheel, proof in reference to which was admissible upon the allegation that appellant was guilty of negligence in furnishing appellee with a defective truck to move freight, etc. We therefore overrule this assignment. San Antonio & A. P. Ry. Co. v. De Ham, 93 Tex. 74, 53 S. W. 375; Decatur Cotton Seed Oil Co. v. Belew (Tex. Civ. App.) 178 S. W. 611.

[18] As one of the grounds for a new trial, appellant urged before the trial court, and now, by appropriate assignments, presents to this court, misconduct on the part of the jury. We have carefully considered all of the evidence introduced on the hearing of the motion in-order to be apprised as far as possible of the acts and conduct alleged to constitute the misconduct of the jury. However, we think it advisable to present only that portion of the evidence responsible for our conclusion reached on the assignment presenting this feature of the appeal, to wit, the juror, R. R. Dudley, testified:

"As to whether I remember any particular discussion had among the jurors as to the attorney's fees that would have to be borne by the plaintiff, I will state that the general opinion was that he would only get half of the amount awarded him at that time. I believe that was the opinion of a number of them. I do not know of all, but that seemed to be the general opinion."

"Question: Now in what way was that mentioned or discussed in reference to the amount of damages that would be awarded? Answer: Give twice the amount that was awarded; that was my understanding of what was done. In other words, if it had not been for the fact that he would have to pay his attorney's fees, as far as I was concerned I would have been for half of $3,500. That is my opinion of the way the other jurors looked at it."

That in the discussion as to the amount appellee was entitled to recover, one of the jurors, Mr. Pierce, discussed the effect of a rupture he had sustained, before an agreement as to the amount for which the verdict should be had been agreed upon; that prior to that time the amounts were all the way from $500 to $5,000; that the attitude of the juror discussing the rupture he had sustained was serious, in that he stated how he had suffered and that a man should be well repaid for such an injury.

J. B. Carter testified that Mr. Pierce, one of the jurors, made the remark earlier in the deliberation of the jury that no one really knew what pain is until they have the actual experience. That he then took down his trousers, and exhibited a wound or scar where he had been operated upon. He said how he was ruptured. That a ton of coal had fallen across his body. This discussion was earlier in the deliberation before the jury had agreed upon the amount. To the same effect was the testimony of M. L. Barnett, C. W. Laudner, and W. J. Bradford as to Mr. Pierce's statements in reference to his having been ruptured and the effect thereof.

The jurors Carter, Barnett, Laudner, Bradford, and Martin each testified to the matter of attorney's fees being discussed along the lines that the amount should be increased over and above what the appellee was in fact entitled to in order to make provision for the payment of attorney's fees. However, each testified that he was not influenced by such discussion in agreeing to the verdict that was rendered in fixing the amount of damages appellee was entitled to recover at $3,500. It is true only one out of the twelve jurors, to wit, R. R. Dudley, testified to the positive effect that the discussion in reference to attorney's fees had upon the amount for which the verdict was rendered. However, from the record it is impossible, with any degree of assurance, to say that not only the discussion had in reference to the attorney's fees, but as well the discussion had in reference to the rupture that juror Pierce had sustained, did

not exert a material influence, unconscious though it might have been, on each juror, which resulted in the denial to the appellant of a fair and impartial legal trial according to the established forms of law; and, unless it can be said that from the beginning to the end of litigation the acts and conduct of those called upon to discharge this great and important public service in the interest of organized society and the maintenance of good government are within the law, same should not be received and acted upon to deprive any litigant of his rights, for, at best, there should be no speculation as to what was the probable effect of improper conduct, but, to the contrary, where there is disclosed doubt and uncertainty as to whether or not the proceedings leading up to the rendition of the verdict were had in conformity with the just and righteous purpose of the law, it cannot be said that due course of law of the land has prevailed and that the law in its majesty has with purity and righteousness upheld and protected the rights of litigants.

The oath administered to the jury admonished them that they could, and should, not receive or consider evidence other than that introduced before them during the trial of the cause.

We therefore sustain this assignment, and, in support of our conclusion in reference thereto, the following authorities are cited: G., H. & S. A. Ry. Co. v. Brassell (Tex. Civ. App.) 173 S. W. 522; San Antonio Traction Co. v. Cassanova (Tex. Civ. App.) 154 S. W. 1194; Hobrecht v. Railway Co. (Tex. Civ. App.) 141 S. W. 579; Southern Traction Co. v. Wilson (Tex. Com. App.) 254 S. W. 1104; H. & T. C. Ry. Co. v. Gray, 105 Tex. 43, 143 S. W. 606; G., C. & S. F. Ry. Co. v. McKinnell (Tex. Civ. App.) 173 S. W. 937; John T. Moore v. Ruby Carter Ivey et al. (Tex. Com. App.) 277 S. W. 106.

This holding is not in conflict with that in the case of Dallas Ry. Co. v. Hallum, 276 S. W. 460, decided by this court, opinion by Associate Justice Looney. In the Hallum Case the evidence failed to show that from the discussion had in reference to attorney's fees there was any influence exerted over any one of the jurors. To the contrary, no doubt remained but that they were not influenced by the discussion had by the members of the jury in their deliberation on the case in the jury room. If there had been any doubt revealed as to the effect of the discussion not having produced any effect on the conclusion reached, the decision of that case would not have been at variance with the disposition of this case.

On account of the errors herein pointed out, the judgment of the court below is reversed, and the cause remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.