## FEDERAL UNDERWRITERS EXCHANGE v. EDWARDS.

### No. 12939.

Court of Civil Appeals of Texas. Dallas.

Dec. 7, 1940.

Touchstone, Wight, Gormley & Touchstone, of Dallas, for plaintiff in error.

John B. Poindexter, of Dallas, for defendant in error.

BOND, Chief Justice.

This is a workmen's compensation case. The Industrial Accident Board denied the claim of defendant in error, W. H. Edwards, for compensation; on findings of the jury, the district court rendered judgment in his favor against plaintiff in error for $3,425.55, for partial incapacity.

The policy of insurance was issued by plaintiff in error to Carter B. White. Edwards, an employe of White, received his alleged injuries while painting a two-story house. The contention is, that his right kidney was torn from its anchorage, causing it to move, or what is sometimes termed "floating kidney," resulting in severe pain and physical disorder. The gravamen of plaintiff in error's complaint on appeal is the insufficiency of evidence to sustain liability.

Edwards sustained no visible injury to his body. The theory upon which he claims disability is based upon the kidney displacement. He testified, in effect, that he was on the lower section of an extension ladder, about 10 feet from the ground, pushing or lifting the upper section, to make the ladder sufficiently long to reach the gable of the house which he was, by his employer, directed to paint; and that, while thus engaged, the ladder moved or gave way at the bottom—"settled down on the side of the house," as he termed it. After fastening or locking the two sections together, he climbed down the ladder to the ground, where he and Mr. White put it in proper place; and testified that, while on the ground, he "felt dizzy and his back began to hurt." However, he again ascended the ladder, finished the painting of the house, and worked about the premises the rest of the day, without expressing complaint to anyone of injury.

The alleged ladder incident occurred on May 28, 1937, and in the following August, he went to see Mr. White relative to his injury; whereupon, Mr. White sent him to the Traders & General Insurance Company (a company wholly disconnected with the transaction), and the agents of that company referred him, for examination, to a Dr. Glass who, according to Edwards' testimony, diagnosed his troubles as appendicitis, or kidney disorder, and recommended an operation. Thereafter, Edwards says, he was directed to a Dr. Webb, who also made a physical examination of him and diagnosed his troubles as a kidney disorder. Neither Dr. Webb nor Dr. Glass gave testimony.

On September 9, 1937, Edwards was examined by Dr. Cowart and, on his testimony, the causal connection between the floating kidney and the ladder incident, as related by Edwards, is the basis for the judgment. Perforce of plaintiff's pleadings, he was burdened with the duty of proving the causal connection of the floating kidney and its attending consequences, with the alleged ladder incident.

We repeat, there was no visible injury; no complaint of injury at the time of the alleged accident; no strain of muscles or ligaments from adjusting the ladder; no pain or physical disorder was experienced while on the ladder, and no recourse to a physician until months afterward. Edwards continued to work as a painter, for other employers, at intervals after the ladder incident, until time of trial.

Dr. Cowart testified that, on September 9, 1937, he discovered a "mass pushed down," movable, with his hands a distance of about six inches up and down Edwards' back, discernible through the muscles, flesh and tissues of his back, which he diagnosed as "floating kidney." He further testified that he could not tell the cause of such abnormality; that a considerable number of people possess this variety of kidneys, and that such condition may result from many causes; that it is often congenital; or may be caused by intra-abdominal strain. More-

over, he testified that a floating kidney causes no pain unless, forsooth, it presses upon or kinks the ureter, thus obstructing flow from the duct or gland. True, Dr. Cowart testified, over objection, that, in his opinion, from what Edwards told him in conjunction with the physical examination, the floating kidney and attendant pain were the result of the ladder accident; but, he said further, "from my physical findings, I do not know."

Then he answers the question: "Assuming, Doctor, that a person should be standing about midway on the first section of an extension ladder, holding and pushing the upper section up above his head with his two hands, in this position (indicating), with the upper part of the ladder away from the house, and the ladder should come loose at the bottom and turn sideways; and, assuming that person is trying—straining and exerting to hold that upper section of the ladder in an upright position and keep it from falling to one side: Is it—in your opinion, is it probable for a person to cause a kidney, by reason of that strain, to be displaced downward?" Answer: "Yes, yes, that would be possible if the weight was added, or if the man got in sufficient strain. * * * yes, it would be possible. In others words, it is a question of increased intra-abdominal pressure—that is, pressure inside. * * * "

Question: "Now, Doctor, in your opinion, is that the cause of Mr. Edwards' trouble? * * * " Answer: "My opinion * * * is—from my physical findings—I don't know."

It is evident, the testimony adduced does not show that the kidney displacement and the pain and suffering incident thereto were the natural result of the alleged ladder incident; being as consistent with the hypothesis that the employe's disability was the result of a congenital "floating kidney", as with the hypothesis that it was the natural result of the accident. The extent of the probative effect of it is, that the kidney displacement might have been, and within the realm of possibility was, caused by the turning of the ladder; and, of equal effect, that it was congenital, or the result of other causes. There is, therefore, no evidence supporting the inference that the kidney displacement, its accompanying pain, and Edwards' disability, were the result of the accident, and more probably correct than other possible inferences. Such being the case, the jury would not be warranted in making an arbitrary choice. Our appraisal of the evidence convinces us that there is no valid conclusion expressive of Edwards' condition, as being the result of the ladder occurrence. Obviously, the purported hypothetical question propounded to Dr. Cowart does not follow the evidence adduced; his answer merely reflects a possibility, based upon speculation and conjecture dehors the record. There is no evidence that Edwards suffered a strain or unusual discomfort in raising the ladder.

■ The burden of proof being on defendant in error to show that his alleged injuries were caused by the accident, it was not enough to show that his condition might have, or could have, resulted from the ladder occurrence, especially so, when the evidence is uncontroverted that Edwards' condition might be the natural result of other causes. The evidence adduced has not the probative force necessary to show that the disabilities of Edwards were the result of his lifting a section of ladder in performance of his employment, any more than that it is congenital, or the result of other causes. Gulf, C. & S. F. Ry. Co. v. Young, Tex.Civ.App., 284 S.W. 664; Texas Pac. Fidelity & Surety Co. et al. v. Hall, Tex.Civ.App., 101 S.W.2d 1050. Therefore, the jury could not speculate as to whether Edwards sustained an injury, and conjecture whether or not his alleged physical disability was caused by injury, or congenital floating kidney. The assignments challenging the sufficiency of the evidence are sustained, requiring a reversal of the cause. There are many assignments based on errors of the trial court in admission and rejection of testimony, which, in all probability, will not occur on another trial; they are overruled.

Judgment of the court below is reversed and cause remanded.

Reversed and remanded.