TEXAS EMPLOYERS INS. ASS'N v. WILKERSON et al.

No. 2555.

Court of Civil Appeals of Texas. Eastland.
Nov. 22, 1946.

Rehearing Denied Jan. 10, 1947.

Wilkerson. The jury found in response to special issues: (1) that Ben Wilkerson sustained an injury to the inside part of his left hand on or about October 12, 1944; (2) that such injury (a) was the result of an accident, (b) was sustained in the course of his employment by the Planters Gin Company at Hamlin, Texas, (c) was the producing cause of his death; (3) that $42.20 average weekly wage of Ben Wilkerson would be just and fair to both the plaintiffs and the defendant; (4) that the payment of compensation to plaintiffs in weekly installments instead of in a lump sum would result in a manifest hardship and injustice to plaintiffs.

Upon the verdict, judgment was rendered for plaintiffs; defendant has appealed. By motions for an instructed verdict and for judgment non obstante veredicto defendant challenged the sufficiency of the evidence to show a causal connection between the alleged injury to the hand of Ben Wilkerson and his death. This question is properly presented to us on appeal. In passing upon this point we must view the evidence in its most favorable light for the plaintiffs, disregarding all conflicts and contradictions and allowing every reasonable inference that may be drawn from it in support of the judgment.

Ben Wilkerson was employed by the Planters Gin Company at Hamlin as the ginner. There was evidence that on or about the 12th of October, 1944, one of the belts came off of the gin stands, and while attempting to replace it on the pulley, Ben Wilkerson was struck by the steel lacing of the belt, and as a result thereof received a deep cut in the palm of his hand. After having received such injury, Ben Wilkerson continued to work at the gin for about ten days or two weeks. His hand was swollen, and he complained of pain in his hand. Thereafter, about the 12th of November, 1944, the deceased was taken to the Callan Hospital at Hamlin where he remained for treatment for about eighteen days. At the time he entered the hospital his hand had completely healed. After his discharge from the hospital he returned to his work at the gin and worked until the close of the season sometime in

McMahon, Springer & Smart, of Abilene, for appellant.

Clay Coggins, of Roby, and Smith & Smith, of Anson, for appellees.

LONG, Justice.

Evelyn Wilkerson, surviving wife, Bennie Doris and Jimmy Louis Wilkerson, surviving children of Ben Wilkerson, deceased, brought this suit against Texas Employers Insurance Company to recover compensation benefits for the death of Ben

January. He returned to the Callan Hospital in March, 1945, and remained there continuously until his death on the 28th day of May, 1945.

If the deceased was suffering from any infection in his blood, the doctors did not discover it during the time he was at the Callan Hospital upon his first visit thereto. However, when he entered the hospital the second time, a specimen of his blood was sent to the Terrell Laboratories at Abilene for a blood culture. A report from such laboratories disclosed that the blood contained a germ known as streptococcus viridans. Dr. Callan and Dr. Johnson, who attended him on both of his trips to the hospital and who were his physicians at the time of his death, testified in their opinion that such germ brought about the blood poisoning that resulted in the death of Ben Wilkerson and that the cut in his hand was a contributing cause of his death.

There is evidence that during the time of the illness of Ben Wilkerson his throat was red and inflamed; also that he suffered from some infection of his kidneys and from pyorrhea of the gums. All of the medical testimony shows that the blood stream infection from which Ben Wilkerson died was brought about by a germ entering his body either through some cut or abrasion of the skin or through the breaking down of the mucous membrane or perhaps through an infection from the kidneys or from the pyorrhea of his gums. Dr. Chastain, a witness for the defendant, testified without contradiction that the most probable portal of entry of the germ was through the mucous membrane of the throat. There is no evidence showing or tending to show that the cut on the hand of the deceased was the most reasonably probable portal of entry for such germ. Further, there is no evidence that such germ is usually found in the proximity of a gin.

■ We will not attempt to set out fully the evidence, but after a careful consideration thereof, we are of the opinion that the plaintiff failed to discharge the burden of proof by showing a causal connection between the cut in the hand of the deceased and his death. As has been stated, the germ involved may possibly have entered the blood stream at either of several different places. Therefore, without a showing that the cut in the hand of the deceased was the most reasonably probable portal of entry of such germ than one of the other probable portals of entry, a finding of causal connection between the cut in his hand and the death of Ben Wilkerson cannot be sustained. Especially is this true when there is uncontradicted evidence that the most reasonably probable portal of entry was through the mucous membrane of the throat. Houston Fire & Casualty Insurance Co. v. Biber, Tex.Civ.App., 146 S.W.2d 442; Davis v. Castile, Tex.Com. App., 257 S.W. 870.

We believe the principles as announced in the foregoing case of Houston Fire & Casualty Insurance Co. v. Biber are applicable here [146 S.W.2d 446]: "Where the evidence shows that a particular result may possibly have occurred by reason of several different causes, *and it is not more reasonably probable that one of the causes was operative rather than the others, a finding of causal relationship between the result and a particular cause can not be sustained.* Davis v. Castile, Tex.Com.App., 257 S.W. 870." (Italics ours.)

Our opinion is further fortified by the following from Federal Underwriters Exchange v. Edwards, Tex.Civ.App., 146 S.W. 2d 461, 463: "The burden of proof being on defendant in error to show that his alleged injuries were caused by the accident, it was not enough to show that his condition might have, or could have, resulted from the ladder occurrence, especially so, when the evidence is uncontroverted that Edwards' condition might be the natural result of other causes. The evidence adduced has not the probative force necessary to show that the disabilities of Edwards were the result of his lifting a section of ladder in performance of his employment, any more than that it is congenital, or the result of other causes. Gulf, C. & S. F. R. Co. v. Young, Tex.Civ.App., 284 S.W. 664; Texas Pac. Fidelity & Surety Co. et al. v. Hall, Tex.Civ.App., 101 S.W.2d 1050. Therefore, the jury could not speculate as to whether Edwards sustained an injury, and conjecture whether or not his alleged

physical disability was caused by injury, or congenital floating kidney."

Also we quote as follows from Barker v. Heaney et al., Tex.Civ.App., 82 S.W.2d 417, 420: "Even if there were evidence that Barker's intoxication was a proximate cause of his death, the fact that the evidence shows, with at least equal clarity, that an embolism may have been the sole proximate cause of his death, there would be no issue to go to the jury. The jury will not be permitted to guess which of two causes shown by the evidence may have caused the death of the deceased. Jury verdicts must be based upon something more than speculation, conjecture, or inference. The plaintiff's evidence must exclude all other reasonable hypotheses of another and different sole proximate cause." (Citing cases.)

Complaint is made by the defendant to the admission of the certain testimony of Dr. Callan wherein he testified as to a history of his case given him by Ben Wilkerson at the time of his entrance into the hospital the second time. Dr. Callan was permitted to testify over the objection of the defendant as follows: "At the time of Ben Wilkerson's second entry into Hospital a blood culture was secured which was positive for Streptococcus Viridans. After obtaining a positive culture, Ben was questioned very carefully as to any source of infection that he might have had as to portal of entry for this infection. He was asked regarding any injuries he might have. Ben stated first that he had an injury to his right hand, breaking a finger. He went to Dr. Chastain and got same treated but there was no break in the mucous membrane of skin and I told Ben that this was not likely a source of infection because there was no break in the skin. He then told me that on October 12, 1944 he cut left hand near base of thumb with a belt lace. Ben pointed to the place where he cut his thumb with belt lace. Several days later this cut on left hand became infected and Ben picked same with his pocket knife in the presence of another employee of Gin. At the time that Ben picked cut place with knife, pus ran from infected wound and Ben stated that within 2 or 3 days after this he began to run temperature. Taking into consideration the fact that Ben had an infected cut on his left hand, several days after it became infected and he began to run temperature and the beginning of his temperature was the beginning of Ben's present trouble we felt that this was probable the portal of entry for Ben's infection and told Ben so."

In connection with the above testimony, the Court gave the following instruction to the jury: "Gentlemen, you will not consider the answer to this next question as any evidence of the facts of the things that Ben Wilkerson told the doctor, or as any evidence of an injury; you will consider them only as a basis on which the doctor arrived at his opinion and diagnosis of the illness of Ben Wilkerson."

The testimony admitted was not part of the res gestae. Defendant contends here that this testimony was inadmissible under the rule as announced by this court in the case of Texas Employers Insurance Association v. Morgan, 187 S.W.2d 603, wherein it was held that it was permissible for a doctor to testify to the history of the case as given him by his patient to enable the doctor to make a proper diagnosis of his illness or injury but that it was not permissible to permit the doctor to testify as to what his patient told him as to how the injury occurred when such issue was controverted. We adhere to such holding in the Morgan case, but we believe that case is distinguishable from the case at bar on the facts. In the Morgan case the doctor testified that his patient told him that at the time he fell from an oil tank that "a heavy man fell on top of him". There was no testimony in the record that a heavy man did fall on top of the patient, but on the contrary, there was evidence that such man did not fall upon him. In the instant case there is evidence in the record other than the history of the case as given by the deceased to the doctor that the deceased did receive a cut in his hand. However, this issue was controverted.

█ We are of the opinion that the correct rule is laid down by McCormick and Ray in their Texas Law of Evidence, Section 386: "It is the general rule that an expert witness having testifed to an opinion, is permitted to give in evidence, either in direct or cross-examination, an account

of the basis upon which he founds the opinion. If this testimony happens to be competent for that purpose it is admissible as independent evidence upon the issues in the case, but even though not so competent, it is still admissible as giving the basis for the previous opinion testified to and thereby enabling the jury to test the value of the opinion evidence. Accordingly when a physician has observed and been consulted by a patient, and testifies as an expert witness with reference to the nature of the ailment, his evidence, in giving the reasons for his opinion, as to statements made to him by the patient upon which his opinion has been partly founded is admissible. Since they are not offered as evidence of the facts declared but merely as an explanation of the previous opinion, they are not hearsay and hence are not subject to the restrictions which hedge in the use of such declarations as hearsay. For example, the physician may in giving his reasons detail the 'history', that is, the patient's account of the cause of the injury, and subsequent course of the ailment. An opinion thus based in part on hearsay is not objectionable."

■ It was not permissible to allow the doctor to testify as to what the deceased told him about having received a cut in his hand as evidence of the fact that such cut was actually sustained. But such evidence was admissible as a history of the case upon which the physician might base his opinion as to the cause of the death of Ben Wilkerson.

We have given this question considerable thought and study, but from an examination of all the authorities we have been able to find, we believe that the rule laid down above is correct. Therefore, no error is shown, especially in view of the instructions given by the trial court to the jury as set out above. Further it will be noted that the doctor was not permitted to give the details as to how or where the injury was sustained. Federal Underwriters Exchange v. Tubbe, Tex.Civ.App., 193 S.W.2d 563.

■ By other points complaint is made to the admission of certain testimony given by Dr. Johnson. Dr. Johnson was asked the following question: "In your opinion, based upon the diagnosis of Ben Wilkerson's condition, did the injury to Ben Wilkerson's hand on October 12, 1944 contribute to the blood stream infection in his body?" to which the doctor answered, "I think so". The defendant objected and excepted to the above and several other similar questions on the ground that the same sought to elicit an opinion and conclusion of the witness based on the assumption that the deceased did sustain an injury to his hand on October 12, 1944, and further because said assumption is predicated solely upon an alleged verbal history detailed by deceased to the witness. So far as we have been able to determine, the deceased did not in giving the history of the case to Dr. Johnson tell him of any injury sustained by the deceased to his hand. Such information was given by the deceased to Dr. Callan who in turn transmitted such information to Dr. Johnson. In the different questions that were propounded to Dr. Johnson none was based upon a hypothetical state of facts, but in each question propounded it was assumed that the deceased did sustain a cut to his hand on October 12, 1944. In view of the fact that the history as given to Dr. Johnson by the deceased did not contain the information as to the cut on the hand and that the doctor had no personal knowledge thereof, we are of the opinion that it was error to assume as a fact in the question asked that such cut was received. As to whether the deceased sustained a cut in his hand was a disputed issue. Texas Law of Evidence by McCormick and Ray, Sec. 634. (Cases therein cited.)

It is our duty to reverse this case because of the insufficiency of the evidence in the respects heretofore mentioned. The case must be either remanded or here rendered for defendant. It appears to us that the case has not been fully developed upon the trial, and we believe that justice would be better subserved by a remand of the case. Therefore, the judgment of the trial court is reversed and the cause is remanded.